OPINION OF THE COURT
W. Denis Donovan, J.
The defendant, a judgment debtor, moves for renewal of a previous motion resulting in a decision and order by this court dated January 12, 1989. In that decision and order, this court denied his request to vacate a 1980 money judgment rendered against him in this action in New York. This action and the resulting judgment was based on an earlier foreign money judgment entered against defendant in the State of Oklahoma. A more detailed chronology is necessary to resolve the legal issues presented revolving around conflicts of law and full faith and credit requirements.
In March 1979, plaintiffs obtained a default money judgment in the District Court of Oklahoma County against the defendant based on his guarantee of a debt. As defendant had returned to New York, the plaintiffs instituted this plenary action on the Oklahoma judgment here in New York in 1980. Again, the defendant defaulted and money judgment was entered in this action on December 24, 1980 for a sum reflective of the Oklahoma judgment plus further interests and costs, etc. It should be noted that no question of proper service with respect to either action has been raised by defendant.
Thereafter, plaintiffs did not seek to enforce either of the judgments for several years. In 1986, by unopposed motion in Oklahoma, defendant obtained relief from the Oklahoma judgment based on that State’s five-year dormancy statute precluding enforcement of judgments. In that order, the Oklahoma judgment was declared "no longer enforceable, has no effect, is void and no longer operates as a lien on the real estate of the Judgment debtor and is released of record”.
With this order in hand, defendant succeeded in having the County Clerk’s Office in Westchester County strike the New York judgment from its judgment role upon mere presenta *1059 tion of a certified copy of that Oklahoma order. Later learning of this, plaintiffs commenced a proceeding against the clerk for an order directing the clerk to restore the New York judgment to the roll. By order of September 1, 1988, under index No. 11353/88, this court allowed for such relief and the judgment was restored.
Defendant then made a formal motion on notice under the original index before this court to vacate the New York judgment by virtue of the foreign dormancy order. By decision and order of January 12, 1989, this court refused such relief finding that short of actual vacatur or reversal of judgment in Oklahoma, the later dormancy declaration did not affect New York’s judgment certainly not when that judgment was obtained during a period when the Oklahoma judgment was fully vital and a totally proper basis for rendition of the New York judgment on full faith and credit grounds. This court further held that the New York judgment, entitled as such to a much longer period of enforceability in this State (CPLR 211 [b]), was a distinct entity and hence not subject to the five-year dormancy ruling of the Oklahoma court on its own judgment. This court then lifted the temporary stay of enforcement it had allowed during the pendency of the motion and directed defendant to appear for examination as a judgment debtor.
On April 7, 1989, following lengthy or delayed proceedings back in Oklahoma, the District Court there issued a consolidated order denying the plaintiffs’ request to vacate the dormancy order and granting defendant’s request to quash and vacate the filing of the New York judgment in Oklahoma. On the strength of certain verbiage used by the Oklahoma court in this latest order defendant here requests renewal of his earlier motion and the decision of this court denying vacatur of the New York judgment.
The wording of the Oklahoma court in its April order upon which defendant most heavily relies is as follows: "The Court further finds that as among the parties to these cases, J. A. Mee, Thomas D. Tarpley, and R. Paul Sprague, the New York judgment did not obtain a life of its own and became void when the Oklahoma judgment in Case No. CJ-79-211 (which judgment was entered March 16th, 1979) became void. The Court further finds that the foreign New York judgment filed in Case No. CJ-86-351 should be quashed and vacated.”
The motion to renew upon papers numbered 1, 2, 3A is hereby granted and upon renewal, the court adheres to its *1060 previous determination denying vacatur of the New York money judgment (Roche v McDonald, 275 US 449).
Common comity would have the decisions and orders of both the Oklahoma and New York courts read in as harmonious a manner as possible. Thus viewed, the verbiage above allows that the Oklahoma court confined its holdings to "the parties to these cases”, i.e., the Oklahoma actions, and did not mean or intend to lend its holding extraterritorial effect reaching into New York and passing on the validity here of New York’s own judgment.
Similarly, this court will not pass on the intent or validity of the foreign court’s declaration that "the New York judgment did not obtain a life of its own and became void when the Oklahoma judgment * * * became void” as that is most properly a matter for review in Oklahoma regarding that court’s failure to recognize the filing of the New York judgment there. Nevertheless, it is profitable for the present holding of this court and should be of interest to the District Court of Oklahoma County regarding its latest holding to note that the issue(s) presented to both courts have been addressed numerous times by highest judicial authority.
In Roche v McDonald (supra), the Supreme Court dealt with the situation where a Washington resident obtained money judgment against another Washington resident in 1918. Almost six years later, the judgment creditor’s assignee located the judgment debtor temporarily residing in Oregon and sued him there on the Washington judgment. Obtaining a default judgment — now more than six years after the Washington judgment, the assignee-judgment-creditor followed the debtor back to Washington and sued there on the Oregon judgment. The judgment debtor argued that Washington’s own six-year dormancy statute precluded any suit that would have the effect to extending the duration or continuing the lien effect of the original Washington judgment beyond its own six-year rule. The creditor simply relied on the Full Faith and Credit Clause of the Constitution. All of the Washington courts disallowed the action but the United States Supreme Court reversed holding that the full faith and credit requirement applied. The Supreme Court held:
"This rule is applicable where a judgment in one State is based upon a cause of action which arose in the State in which it is sought to be enforced, as well as in other cases; and the judgment, if valid where rendered, must be enforced *1061 in such other State although repugnant to its own statutes. Christmas v. Russell, 5 Wall. 290, 302; Fauntleroy v. Lum, 210 U.S. 230, 236; Kenney v. Supreme Lodge, 252 U.S. 411, 415. * * *
"Of course a want of jurisdiction over either the person or the subject-matter might be shown. * * *
"The Court of Oregon had jurisdiction of the parties and of the subject-matter of the suit. Its judgment was valid and conclusive in that State. The objection made to enforcement of that judgment in Washington is, in substance, that it. must there be denied validity because it contravenes the Washington statute and would have been void if rendered in a court of Washington; that is, in effect, that it was based upon an error of law. It cannot be impeached upon that ground. If McDonald desired to rely upon the Washington statute as a protection from any judgment that would extend the force of the Washington judgment beyond six years from its rendition, he should have set up that statute in the court of Oregon and submitted to that court the question of its construction and effect. And even if this had been done, he could not thereafter have impeached the validity of the judgment because of a misapprehension of the Washington law. In short, the Oregon judgment, being valid and conclusive between the parties in that State, was equally conclusive in the courts of Washington, and under the full faith and credit clause should have been enforced by them.
"The judgment of the Supreme Court of Washington is reversed”. (Supra, at 452-455.)
Unlike McDonald (supra), the judgment debtor here would not even have been in a position to defend the New York action on ground of limitation under Oklahoma law. As previously observed, the New York action was started and ended in judgment clearly within the five-year time frame allowed for enforcement by the rendering State of Oklahoma. The numerous subsequent cases citing Roche v McDonald since 1928 including many in our highest court have neither modified nor diluted the efficacy of its holding.
Whatever Oklahoma may ultimately decide about New York’s judgment, the State of New York will continue its duty of rendering full faith and credit to the original Oklahoma judgment by continuing its own judgment of record and affording its legal devices to enforcement.
There remains to consider the cross motion of plaintiffs *1062 seeking an order punishing defendant for contempt, both civil and criminal. It charges defendant with violating the temporary restraining order contained in the enforcement subpoena personally served on him by transferring, selling or otherwise disposing of assets, both real and personal, and by failing to continue to appear for depositions as ordered. Actions in violation of such a restraining notice are punishable by contempt under CPLR 5251. The court has considered papers marked 3, 5, and 6.
After this court’s order of September 1, 1988 in the collateral proceeding directing the clerk to restore to record the judgment under this index, the plaintiffs served an information subpoena by personal service upon defendant on September 13, 1988. This subpoena with restraining notice contained, in substantial form, the language of CPLR 5222 (b) forbidding, inter alia, any sale, assignment or transfer by the defendant of any property in which he had an interest, except upon direction of the Sheriff or order of the court, until the judgment was satisfied or vacated. Despite such notice properly served, it is admitted by defendant that a jointly titled marital home and substantial stocks in two small corporations were sold by him and moneys from a checking account in New York were deleted or utilized by him or transferred to an account in a Connecticut bank. All of these transactions occurred immediately or shortly after this court’s decision and order of January 11, 1989 denying vacatur of judgment. In the instance of the checking account, no further deposits were made after January 17, 1989 purportedly because of defendant’s residency change from New York to Connecticut notwithstanding his continuing work activity in New York City. He explains the sale of the New York residence by stating in circuitous fashion a series of two or three sequential sales (it is impossible to divine), and the undocumented fact that the contract for the New York residence was entered into during prerestraint July 1988. He claims it was sold at arms’ length for a loss and that his portion of the undisclosed proceeds were used to repay his original down payment borrowing, none of any of the above which is documented. The next house purchased by him and his wife seems to have been immediately resold, and, amazingly, the present house in Connecticut is in his wife’s name only.
Similarly unconvincing and arcane is his attempt to explain the sale of the Peerless Premier stock valued by him to a *1063 bank on January 15, 1989 at $2,500,000 and sold two months later for $20,000 (only $1,000 of which was received at sale time) and assumption by the purchaser, a business associate, of a possible guarantee indebtedness of $125,000.
Sale of 95,100 shares of Typewriters Unlimited stock to an employee of that corporation, only coincidentally four days after the Peerless sale, for $8,560 was on terms of, lo and behold, only $1,000 down and a seven-year buyout on the balance. This sales sum is purported based on book value albeit totally undocumented.
Finally, reservation of any of the above proceeds to the credit of the judgment creditor is not shown and defendant’s disposition of any of these sums is unexplained.
The defendant is notified that at the hearing hereby scheduled, this court will seek to determine whether defendant is guilty of civil and/or criminal contempt. Although "the line between the two types of contempt may be difficult to draw in a given case, and the same act may be punishable as both a civil and a criminal contempt, the element which serves to elevate a contempt from civil to criminal is the level of willfulness with which the conduct is carried out” (McCormick v Axelrod, 59 NY2d 574, 583) and defendant is entitled to know in advance the type of contempt to defend against (Bloom v Illinois, 391 US 194). He is so notified.
This court is aware of the severity of punishment that defendant faces and will thus allow for a hearing at which defendant will have a final chance to defend the legitimacy of his actions. The court is also aware that there was pending before it a motion by new counsel for defendant seeking to discharge his counsel on this motion. That motion contained more recent affidavits claiming defendant proceeded on advice of prior counsel as justification for the property transfers. In this regard, it should be noted that while such excuse for contemptuous conduct may have some bearing on the willfulness element in the criminal context, a willful intent has repeatedly been held not to be a requisite element for civil contempt (Gordon v Janover, 121 AD2d 599).
Accordingly, a hearing on both civil and criminal contempt will be held at 11:30 a.m. on Monday, October 2, 1989, in courtroom 1603.