649 So.2d 95 (1995)
Dorothy Delores NORVELL
v.
Clifford Harry NORVELL.
No. 94-CA-0001.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 1995.
Rehearing Denied February 15, 1995.
Pat M. Franz, Metairie, for appellant.
Ellen Widen Kessler, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, for appellee.
Before LOBRANO, JONES and LANDRIEU, JJ.
LOBRANO, Judge.
This appeal arises from a judgment reducing the amount of monthly alimony to be paid to plaintiff-appellant, Dorothy Delores Norvell from defendant-appellee-cross appellant, Clifford Harry Norvell.

FACTS AND PROCEDURAL HISTORY:
Dorothy D. Norvell was granted a divorce from Clifford Norvell in the Circuit Court of Shelby County, Tennessee in 1977. The final divorce decree provided for payment of alimony in futuro to Mrs. Norvell in the amount of $1,150.00 per month until Mrs. Norvell remarried.
*96 In September, 1983, as a result of a petition to modify filed by Mr. Norvell, the trial court temporarily reduced the monthly alimony from $1,150.00 to $850.00. This reduction was to continue until Mr. Norvell obtained employment with income sufficient to pay the original amount.
In March, 1986, Ms. Norvell filed a petition for contempt. Mr. Norvell was subsequently not found in contempt. However, the trial court ordered him to pay the arrearages due and further ordered him to pay into an escrow account, by December of each year, the total amount of alimony due the following year.
In February, 1989, Ms. Norvell again filed a petition for contempt alleging that Mr. Norvell had not paid the alimony to the escrow agent for the year 1989 as ordered by the court. Mr. Norvell countered by filing a petition to terminate alimony due to a change in circumstances.
In May, 1990, following a hearing on the merits, the trial court reduced the alimony in futuro from $850.00 per month to $400.00 per month retroactive to January 1, 1990 and further ordered that all alimony payments were to terminate as of December 31, 1990. This judgment was reversed by the Tennessee appellate court. The $850.00 per month alimony was reinstated retroactive to January, 1990. In its' decree, the Tennessee appeals court further stated that none of the provisions of the decree entered in March 1986 were modified in any way.[1] On February 19, 1991, the Tennessee Supreme Court denied Mr. Norvell's application for permission to appeal.
Subsequently, Ms. Norvell filed a third petition for contempt. In May 1991, Mr. Norvell was found in contempt for failing to abide by the orders of the court. The court rendered judgment against Mr. Norvell for arrearages in the amount of $15,600.00 "together with pre-judgment interest at the rate of 10% per annum from the date each alimony payment was due and post-judgment interest at the rate of 10% per annum" from the date of the order.
During the pendency and resolution of the litigation in Tennessee between the parties, Mr. Norvell moved to New Orleans, Louisiana, in 1985 and Ms. Norvell moved to Aspen, Colorado in 1988.
Litigation in Louisiana began on June 21, 1991 when Ms. Norvell filed a petition in the Civil District Court for the Parish of Orleans seeking to have the May 21, 1991 Tennessee judgment for arrearages made executory. See, La.R.S. 13:4241, et seq. On July 22, 1991 the trial court ordered the Tennessee judgment be made executory.
Ms. Norvell then proceeded with enforcement of the judgment through a writ of fieri facias and garnishment proceedings against accounts owned by Mr. Norvell. Mr. Norvell responded by filing a motion to stay execution of the judgment, alleging lack of notice. The stay was granted upon the posting of security. At the same time, Mr. Norvell filed pleadings requesting a reduction in the amount of monthly alimony. Service was perfected on Ms. Norvell's attorney. Ms. Norvell countered with exceptions of lack of jurisdiction and improper service of process. The trial court denied these exceptions. Writs were applied for and denied by this Court and the Louisiana Supreme Court. Norvell v. Norvell, unpub. 92-C-0060 (La. App. 4th Cir. Jan. 27, 1992), writ den. 594 So.2d 1322 (La.1992).
On June 3, 1992, upon motion by Ms. Norvell, the trial court granted a partial release of a garnished account for the purpose of payment of a check for the principal amount of alimony arrearages. However, the parties were unable to agree as to the amount of interest due. The trial court ruled that the interest was due on the lump sum payment from the date it was to be paid to the escrow agent. This court reversed that decision and ruled that the interest was due as of the date each installment was to be paid to Ms. Norvell. The trial court's ruling suspending the accrual of interest from September 16, 1991 to April 15, 1992 was affirmed. Norvell v. Norvell, 629 So.2d 1312 (La.App. 4th Cir.1993).
*97 On February 19, 1993, the trial court heard Mr. Norvell's rule to reduce alimony.
In a judgment signed August 16, 1993, the trial court reduced the monthly alimony payments to $500.00 retroactive to April 1, 1993.
Ms. Norvell appeals that judgment asserting the following assignments of errors:
1) The trial court erred in exercising jurisdiction to modify the judgment of another state which awarded periodic alimony.
2) The trial court erred in its choice of law in determining the demand for the modification of alimony awarded by a judgment of another state.
3) The trial court erred in its application of Louisiana law to the demand for modification of alimony awarded by a judgment of another state.
Mr. Norvell answers the appeal and cross-appeals asserting the following assignments of error:
1) The trial court erred by not terminating the alimony payments or, in the alternative, by not reducing it to $300.00 per month.
2) The alimony reduction should have been made retroactive to the date of filing because good cause was not shown to limit retroactivity.
The principal issues for our determination involve questions of jurisdiction and choice of law.

ASSIGNMENT OF ERROR 1:
Mrs. Norvell asserts that the denial of her exceptions to the court's jurisdiction was manifestly erroneous and, despite our previous ruling on her writ application, should be reconsidered by this court, citing Wells v. Gillette, 620 So.2d 301 (La.App. 4th Cir.1993) in support.
Mr. Norvell argues that our prior writ disposition is the law of the case and that Wells is not applicable.
This Court previously considered Ms. Norvell's argument via her application for writs and concluded that "[t]he trial court correctly denied the exceptions filed by the relator." Wells v. Gillette, supra, recognized that the "law of the case" doctrine is not an inflexible rule and should not be dispositive of an issue where to do so would accomplish an obvious injustice, or where the prior appellate decision was clearly, palpably or manifestly erroneous. Id. at 303. However, for the following reasons, we conclude that Wells is inapplicable and that our previous writ disposition was correct.
Ms. Norvell argues lack of jurisdiction over her person and lack of subject matter jurisdiction. She asserts that the mere use of Louisiana courts to enforce her Tennessee judgment does not equate with submitting to the personal jurisdiction of our courts for other proceedings and does not satisfy minimal due process requirements. She analogizes Mr. Norvell's rule to reduce alimony with a reconventional demand, which she asserts, is not permissible under the Uniform Enforcement of Foreign Judgments Act (La. R.S. 13:4241, et seq). With respect to the subject matter jurisdiction, Ms. Norvell asserts that the Louisiana courts are without authority to modify a Tennessee judgment.
We disagree with those arguments.
When Ms. Norvell sought enforcement of the Tennessee judgment in Louisiana she subjected herself to the personal jurisdiction of our courts with respect to matters pertaining to that foreign judgment. La.C.C.Pro. Art. 6(3). Her situation is different from those where use of our courts by a non-resident may not necessarily satisfy the due-process minimal contacts necessary to establish non-resident jurisdiction on a totally unrelated matter.[2] Although it can be argued that only the arrearage judgment is the subject of Ms. Norvell's suit and that modification of the original decree is an entirely different matter, that is a distinction without a difference. The arrearage award is the result of enforcing the alimony decree, and the matters are so interrelated that any distinction is of minimal consequence. Mr. Norvell's rule to reduce was in response to Ms. Norvell's enforcement proceedings. She *98 submitted to the personal jurisdiction of this state with respect to all matters ancillary to the alimony decree, including modification proceedings, when she sought enforcement in Louisiana's courts.
Furthermore, and for basically the same reasons, the trial court had subject matter jurisdiction to hear the issue of reduction of alimony. Once a foreign judgment is made executory in Louisiana and appropriate notice given, it becomes a Louisiana judgment and "shall be treated in the same manner as a judgment of a court of this state. It shall have the same effect and be subject to the same procedures, and defenses, for reopening, vacating, or staying as a judgment of a court of this state and may be enforced in the same manner." La.R.S. 13:4242.
Thus, when Ms. Norvell made the Tennessee arrearage judgment executory in Louisiana, it became a Louisiana judgment. And, as we previously noted, because the arrearages' judgment is predicated, and has as its basis, the failure to comply with the original alimony decree, modification of the alimony decree is subject to the authority of Louisiana's courts.
For the reasons given, our prior ruling is not subject to the Wells criteria since it was neither manifestly erroneous nor will it create an obvious injustice to the parties. It was a correct disposition of the jurisdiction issue.

ASSIGNMENT OF ERRORS 2 AND 3:
The issue raised by Ms. Norvell's arguments on the choice of law is a simple one. When the parties lived, married and divorced in Tennessee, and Tennessee rendered an alimony judgment, what law controls modification of that judgment after both parties have established domiciles in states other than Tennessee? The answer to that issue is not so simple.
The trial court concluded that:
"Louisiana provides the procedural vehicle for determination of a modification of alimony payments. It does not seem unjust nor unfair to have the issue decided based on the law of the former state especially in view of Louisiana's significant connection to the parties and the rule that modification is permitted under the laws of either state. Ms. Norvell submitted to the jurisdiction of Louisiana and Mr. Norvell lives in Louisiana. This issue is resolved in favor of application of Louisiana law."
There are no reported Louisiana cases dealing with the conflicts issue posed in this case. We turn to the statutory law for guidance.[3]
Louisiana's conflict of laws provisions were amended and re-enacted in 1991 by Act 923. In particular, we find the provisions of Civil Code Article 3515 persuasive. In a circuitous manner, the revised provisions point to that article as dispositive. Article 3522 provides that the effects of marriage and divorce are governed by the law applicable under Article 3519. Article 3519 details the guidelines to be utilized in determining which state's laws are controlling when the issue involves a natural person's status. The second paragraph of that article provides, in part, that the policies referred to in Article 3515 are a relevant factor in determining which state's laws should govern.[4]
*99 Comment (a) to Article 3515 instructs that the article "applies only to cases that fall within the scope of this Book and that are not `otherwise provided [for] in this Book.'" Article 3515 is referred to as the general and residual article, and provides:
"Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified adverse consequences that might follow from subjecting a party to the law of more than one state."
In brief, Mr. Norvell analyzes each criteria set forth in Article 3515 and asserts that they all point to Louisiana as the correct choice of law. The problem with that analysis, however, is that it would also apply to the domiciliary state of Ms. Norvell. That is, Ms. Norvell can, and does argue, that her domiciliary state has the same policy interests as does Louisiana, Mr. Norvell's domiciliary state. For example, comment (b) suggests that the objective of Article 3515 is to identify "the state whose policies would be most seriously impaired if its law were not applied to that [particular] issue." Under the factual scenario of this case, the policy objectives of both the husband and wife's domiciliary state's are equal.[5] Given that equality, we resolve the issue by minimizing the adverse consequences that would follow from subjecting a party to the law of more than one state.
The second paragraph of Article 3515 suggests that the relevant policies of competing states should be evaluated in light of the policy "of upholding the justified expectations of the parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state." "All other factors being equal, the parties should not be subjected to the law of a state that they had no reason to anticipate would be applied to their case." Article 3515, comment (c).
The parties to this litigation resided, married and were divorced in Tennessee. Until the present matter was filed in Louisiana, all litigation between the parties was conducted in Tennessee.[6] The decree ordering the payment of alimony was rendered in Tennessee. Neither party could have anticipated the use of any other state's law to settle their differences. Granted, Tennessee may no longer have a societal or economic interest in the outcome of the current litigation since that interest has been transferred to the parties' domiciliary states. However, given the conclusion that the societal or economic interests of the parties' domiciliary states are equal, we cannot rely on a balancing of those interests to resolve this issue.
In our opinion, the need for continuity, stability and minimizing the adverse consequences of forum shopping require us to apply Tennessee law in this case. The evidence does not suggest that when the parties litigated their differences in Tennessee that they anticipated any other state's laws would control future modification. It is reasonable to conclude that Tennessee law should control the modification of a Tennessee decree, where all other factors are equal.
We therefore hold that the trial judge erred in failing to apply Tennessee law in this case. We reverse and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] Norvell v. Norvell, 805 S.W.2d 772 (Tenn.App. 1990), appeal denied (February 19, 1991).
[2] For example, if a non-resident utilizes our court to collect on a note, that fact alone will not subject him to personal jurisdiction for a suit brought against him on a totally unconnected matter.
[3] We note that our decision in Kirby v. Kirby, 579 So.2d 508 (La.App. 4th Cir.1991), writ denied 582 So.2d 1308 (1991) dealt with a situation involving a contractual alimony settlement confected in Georgia. We relied on Georgia law to determine if it was subject to modification, but then with both parties' approval, applied Louisiana law to determine the extent of modification. That decision was rendered prior to the 1991 Codal revision of the Conflict of Laws' provisions.
[4] Article 3519 provides:

The status of a natural person and the incidents and effects of that status are governed by the law of the state whose policies would be most seriously impaired if its law were not applied to the particular issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the relationship of each state, at any pertinent time, to the dispute, the parties, and the person whose status is at issue; (2) the policies referred to in Article 3515; and (3) the policies of sustaining the validity of obligations voluntarily undertaken, of protecting children, minors, and others in need of protection, and of preserving family values and stability. (emphasis added)
[5] The fact that Ms. Norvell had to enforce her judgment in Louisiana is not probative. She had to file in Louisiana since Mr. Norvell lives here.
[6] We note that even after the parties moved from Tennessee their domestic litigation continued in that state.