FOURTH DIVISION

 June 26, 2003

No. 1-02-0649

LOGEMANN HOLDING, INC., ) Appeal from the

 ) Circuit Court of

Plaintiff-Appellant, ) Cook County

 )

v. ) No. 95 L 13531

 )

ELFRIDE LIEBER, d/b/a Lieber )

Werkzeugmachinenfabrik Lubbecke, a )

German citizen; OTTO LIEBER d/b/a )

Lieber Werkzeugamaschinenfabrik )

Lubbecke, a German citizen; BAERBEL )

LIEBER, d/b/a Lieber )

Werkzeugmaschinenfabrik; a German )

citizen, LIEBER WERKZEUGMASCHINENFABRIK )

LUBBECKE, a German business entity; )

and LIEBER MACHINE TOOL COMPANY, an )

Illinois corporation, )

 )

Defendants-Appellees )

 )

(Sheriff of Cook County, ) Honorable

 ) Thomas P. Quinn,

Respondent). ) Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

The plaintiff, Logemann Holding, Inc., obtained a judgment against the several defendants in the United States District Court for the Eastern District of Wisconsin on January 16, 1992.  Thereafter, it sought to register the judgment in the circuit court of Cook County on September 13, 1995.  Without contest, the judgment was registered pursuant to the Uniform Enforcement of Foreign Judgments Act (Uniform Act) (735 ILCS 5/12-650 (West 1994)).

Eventually, plaintiff discovered a parcel of real estate in Illinois in which the same defendants had an interest.  Accordingly, on January 8, 2000, eight years after entry of judgment in Wisconsin and 4 1/2 years after registration in Illinois, plaintiff, pursuant to the Uniform Act, delivered a direction to levy that real estate to the sheriff of Cook County.  The sheriff, however, declined to execute the levy because the direction to levy was placed more than seven years after the entry of judgment in Wisconsin.  Thereafter, plaintiff sought an order from the circuit court of Cook County directing the sheriff to proceed with the levy.

The issue before us is whether the life of a foreign judgment is measured from the date it is entered in the originating state or from the date it is registered in Illinois.  The trial court held that the laws of the state of origination govern; however, for the reasons set forth hereafter, we reverse. The Uniform Act, which was adopted in Illinois in 1951, is intended to make easier the enforcement of judgments across state lines.

In coming to our conclusion, we must examine with care the language of the Uniform Act.  Section 12-652 provides:

A copy of any foreign judgment authenticated

in accordance with the acts of Congress or the

statutes of this State may be filed in the office

of the circuit clerk for any county of this

State.  The clerk shall treat the foreign

judgment in the same manner as a judgment of

the circuit court for any county of this State.

A judgment so filed has the same effect and is

subject to the same procedures, defenses and

proceedings for reopening, vacating, or staying

as a judgment of a circuit court for any

county of this State and may be enforced or

satisfied in like manner."  735 ILCS 5/12-652

(West 1994).  

In 
Light v. Light
, 12 Ill. 2d 502 (1957), a Missouri statute provided for conclusive presumption of payment of a judgment after 10 years from the date of entry.  Under the Uniform Act, the judgment was filed in Illinois less then 10 years after judgment was entered, but enforcement was not sought until after the 10 year period had run.

The 
Light
 court was clear that the dormancy period begins upon the registration in Illinois.  The court said:

"Under the Uniform Act, unless the registration

is set aside after a hearing, it is the registered

judgment that becomes the final judgment of the

Illinois court. [Citation.] Such a provision is essential

to the act's purpose of protecting the priority of

the creditor who levies on the foreign judgment.

The act thus contemplates that the vitality of

the foreign judgment is to be determined as of

the date that it is registered.  And in this

case the judgment was registered 
under the 

statute several months before the ten-year period 

expired." 
(Emphasis added).  
Light
, 12 Ill. 2d at 

508-09.

We are faced with a similar set of facts in the instant matter.  Wisconsin law provides that no execution on the judgment shall issue after five years of the rendition of the judgment and then provides a process for reviving the judgment on application to the court up to 20 years.  Wis. Stat. Ann. §815.04 (West 1994).

In 
La Societe Anonyme Goro v. Conveyor Accessories, Inc.
, 286 Ill. App. 3d 867 (1997), the court determined that the filing of a foreign country's judgment was not limited by the Illinois statute of limitations of five years and that the Uniform Act did not provide limitations for the period of enforcement of non- Illinois judgments similar to the filing of initial actions in Illinois.  

In 1991, the Uniform Act was amended, striking the five-year limitations period and mandating that the seven-year period for enforcing Illinois judgments applied to the enrollment and enforcement of a sister state's judgment rather than the five- year period for other actions.  The 
Conveyor
 case dealt with a foreign country's judgment and ultimately held that it was enforceable in the same manner as the judgment of a sister state and that the seven-year limitations period as provided for Illinois judgments should be applicable.  The judgments of a foreign nation are controlled by the Uniform Foreign Money-Judgments Recognition Act (735 ILSC 5/12-618 
et seq.
 (West 1994)), and that act provides that as long as a foreign nation's judgment is "final and conclusive and enforceable where rendered" (735 ILCS 5/12-619 (West 1994)), it "is enforceable in the same manner as the judgment of a sister state" (735 ILCS 5/12-620 (West 1994)).  Once these initial concerns have been met, the Uniform Act will apply.

Thereafter, in 
Pinilla v. Harza Engineering Co.
, 324 Ill. App. 3d 803 (2001), the court, addressing the enforcement of a foreign country's judgments, made a distinction between the time of registration and the time of enforcement, pursuant to the Uniform Foreign Money-Judgments Recognition Act,
 on the theory that judgments rendered by foreign countries were addressed.  In any event, the conclusion of the 
Pinilla
 case was that where the plaintiff seeking enforcement has attached the appropriate documents relating to the judgment which, thereafter, is authenticated in accordance with the statutes of Illinois, such properly authenticated judgment is to be treated as any other Illinois judgment including reopening, revival under section 13-218 of the Code of Civil Procedure (735 ILCS 5/13-218 (West 1994)), vacating, staying, or any other 
relevant proceedings.  
Pinilla
, 324 Ill. App. 3d at 812.

The trial court relies upon what it believes to be the plain language of section 12-108, dealing with the dormancy period of Illinois judgments, which provides:

"Except as herein provided, no judgment

shall be enforced after the expiration of 7 years

from the time the same is rendered, except

upon the revival of the same by a proceeding

provided by Section 2-1601 of this Act ***."

735 ILCS 5/12-108 (West 1994).  

The trial court further suggests that to create an exception to the seven-year rule would somehow elevate foreign judgments to a higher status than Illinois judgments.  

While such a construction is not unreasonable, it conflicts with the language of the Uniform Act as well as those Illinois courts that have recently addressed the issue, albeit in the cases of 
Pinilla
 and 
Conveyor
, they dealt with judgments of a foreign nation as 
dicta
.  

The Uniform Act has a particularly interesting section dealing with uniformity of interpretation.  Section 12-657 provides: "This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it."  735 ILCS 5/12-657 (West 1994).  To date, 46 states, the District of Columbia, and the Virgin Islands have adopted the Uniform Act.  Accordingly, we will examine the decisions of sister states.

The oft-cited 
Pan Energy v. Martin
, 813 P.2d 1142 (Utah 1991), is an early example of the status to be accorded a foreign judgment under the Uniform Act.  In September of 1982, Pan Energy secured a judgment against the defendant in the United States District Court in Oklahoma, and in August of 1987, registered the Oklahoma judgment pursuant to the Uniform Act as adopted in Utah.  The 
Pan Energy
 court determined that when the Oklahoma judgment was registered in Utah in August of 1987, it was not dormant with respect to its possible enforcement in Oklahoma. Consequently, because the judgment was filed with the clerk of the local court, the Utah court treated the foreign judgment as if it were a local judgment subject to the same procedures, attack and enforcement as the Utah judgment.

In the 1984 Oklahoma Supreme Court case, 
First of Denver Mortgage Investors v. Riggs
, 692 P.2d 1358 (Okla. 1984), the court agreed in principle with our trial court and stated that the dormancy period of an unexecuted foreign judgment filed under the Uniform Enforcement of Foreign Judgments Act begins to run when judgment is rendered in the originating forum state.  In the end, however, the court found that the dormancy period had expired.  However, in a more recent case, 
Drllevich Construction, Inc. v. Stock
, 958 P.2d 1277 (1998), the Supreme Court of Oklahoma expressly overruled 
First of Denver Mortgage Investors
 and stated that a foreign judgment "which is enforceable at the time the judgment creditor registers the foreign judgment in Oklahoma will be considered, for the purposes of enforcement, as a new judgment of this state to which Oklahoma's five year dormancy statute will apply."    
Drllevich
, 958 P.2d at 1281.  See also 
Walnut Equipment Leasing Co. v. Wu
, 920 S.W.2d 285, 286 (Tex. 1996); 
Trubenbach v. Amstadter
, 109 Nev. 297, 300, 849 P.2d 288, 290 (1993); 
Galef v. Buena Vista Dairy
, 117 N.M. 701, 875 P.2d 1132 (App. 1994); 
Mee v. Sprague
, 144 Misc. 2d 1057, 545 N.Y.S.2d 268 (N.Y. Sup. 1989); 
Payne v. Claffy
, 281 S.C. 385, 315 S.E.2d 814 (App. 1984); 
Warner v. Warner
, 9 Kan. App. 2d 6, 8, 668 P.2d 193, 195 (1983); 
Redondo Construction Corp. v. United States
, 157 F.3d 1060 (6th Cir. 1998); 
Tronagun Corp. v. Mizerock
, 820 F. Supp. 225 (W.D. Pa. 1993); 
Burke v. Iowa District Court
, 546 N.W.2d 582 (Iowa 1996); 
G&R Petroleum, Inc. v. Clements
, 127 Idaho 119, 898 P.2d 50 (1995); 
Norvell v. Norvell
, 649 So. 2d 95 (La. 1995); 
Aetna Insurance Co. v. Williams
, 237 Ga. App. 881, 517 S.E.2d 109 (1999); 
Yusten v. Monson
, 325 N.W.2d 285 (N.D. 1982); 
Ritterbusch v. New London Oil Co.
, 927 S.W.2d 873 (Mo. App. 1996); 
Hamilton v. Seattle Marine & Fishing Supply Co.
, 562 P.2d 333 (Alaska 1977); but see 
G&R Petroleum
, 127 Idaho 119, 898 P.2d 50; 
Citibank (South Dakota, N.A.) v. Phifer
, 181 Ariz. 5, 887 P.2d 5 (App. 1995); 
Baum v. Baum
, 820 P.2d 1122 (Colo. App. 1991).

We find these cases persuasive and reverse the trial court and remand this case to the circuit court of Cook County to provide directions that the plaintiff's motion to compel the sheriff of Cook County to levy be granted. 

Reversed and remanded.

THEIS, P.J., and KARNEZIS, J., concur.