**FIRST OF DENVER MORTGAGE
INVESTORS, Appellant,**

v.

**Clyde A. RIGGS, Appellee.**

Nos. 59563, 59885.

Supreme Court of Oklahoma.

June 5, 1984.

Rehearing Denied Jan. 23, 1985.

Gary Rhodes, Oklahoma City, Norman L. Grey and Kimber Palmer, Enid, James Benson, Jr., Denver, Colo., for appellant.

Jerry L. Hemry, Hemry, Hemry & Colston, Oklahoma City, for appellee.

DOOLIN, Justice.

First of Denver Mortgage Investors (judgment creditor) obtained a money judgment against Clyde A. Riggs (judgment debtor) in a Colorado Court on January 20, 1977. Judgment creditor filed its judgment in Oklahoma County on October 17, 1977, pursuant to the Uniform Enforcement of Foreign Judgments Act, 12 O.S.1971, §§ 719–726. Judgment debtor partially paid the judgment in 1978 and judgment creditor executed a partial release of judgment. No writ of execution was ever issued on this judgment in Oklahoma.

In 1982 judgment creditor filed post judgment interrogatories and scheduled an asset hearing. On December 8, 1982, judgment debtor filed a Motion to Quash Interrogatories, wherein he requested the District Court of Oklahoma County to quash the interrogatories and to hold the judgment dormant and unenforceable. The motion was granted and the judgment creditor filed timely appeal on January 6, 1983 (No. 59,563).

Meanwhile, judgment creditor refiled the Colorado judgment in Oklahoma County pursuant to the Uniform Enforcement of Foreign Judgments Act, on December 31,

1982. Debtor filed a Suggestion of Dormancy on January 11, 1983. Creditor filed interrogatories and debtor filed a Motion to Quash Interrogatories on February 10, 1983. The district court granted the motion, holding that the refiling of the Colorado judgment did not revive the judgment, which had already been held dormant. Creditor appealed on March 15, 1983 (No. 59,885). The second appeal was consolidated with the first under the surviving number 59,563.

Creditor presents several lines of argument to sustain its contention that the district court erred in holding that the Colorado judgment was dormant under the Oklahoma dormancy statute, 12 O.S.1981, § 735. Creditor argues that if § 735 applies, then the actions taken to enforce the judgment were tantamount to an execution. Creditor also argues that certain actions of the debtor worked as an estoppel which prevented him from raising the defense of dormancy. Creditor further argues that even if the judgment became dormant, creditor had a right to revive the judgment under the dormancy statute as it read when the judgment was first filed in 1977.

Alternatively, creditor argues that the dormancy statute is inapplicable to foreign judgments which are filed in Oklahoma pursuant to the Uniform Enforcement of Foreign Judgments Act. Creditor also offers constitutional authority for the argument that refusal to recognize the Colorado judgment amounts to a violation of the full faith and credit clause of the United States Constitution, and of the due process clauses of the Oklahoma and United States Constitutions. Creditor also argues that by refusing to enforce its Colorado judgment, the district court unconstitutionally cancelled an accrued cause of action.

Debtor makes a single argument to support an affirmance of the district court's rulings. In a brief which is unresponsive to most of creditor's contentions, debtor argues that the foreign judgment obviously became dormant by operation of the dor-

mancy statute, citing the case of *Chandler-Frates & Reitz v. Kostich,* 630 P.2d 1287 (Okl.1981).

### I.

Creditor filed its Colorado judgment under the Uniform Enforcement of Foreign Judgments Act, 12 O.S.1971, §§ 719–726 (Uniform Act). In 1977, when the judgment was filed, § 721 of the Uniform Act provided:

> "A copy of any foreign judgment authenticated in accordance with the applicable act of Congress or of the statutes of this state may be filed in the office of the court clerk of any county of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of the District Court of any county of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses, and proceedings for re-opening, vacating, or staying as a judgment of a District Court of this State and may be enforced or satisfied in like manner."

This section was amended in 1978, in a manner which has no bearing on the issues in this case.

■ The statute says, "a judgment so filed has the same effect ... as a judgment of a District Court of this state and may be enforced or satisfied in like manner." This language has been interpreted to mean that a foreign judgment is treated as if it were rendered in the state of filing for purposes of enforcement.

New York State has adopted the Uniform Act. In *Hospital Service Plan of New Jersey v. Warehouse Production & Sales Employees Union,* 102 Misc.2d 872, 424 N.Y.S.2d 647 (Supp.1980), the New York Court said, "The rule is well settled that once a judgment is filed it becomes the equivalent of one rendered by the New York Supreme [trial] Court. However, this is for the purpose of enforcement." 424 N.Y.S.2d at 648. The court held that a

New Jersey judgment filed in New York pursuant to the Uniform Act would be recognized according to its terms under New Jersey law, but would be enforced in New York according to the law of New York as applied to New York judgments.

In *Mansfield State Bank v. Cohn*, 58 N.Y.2d 179, 460 N.Y.S.2d 12, 446 N.E.2d 768 (1983), the New York Court held that the filing of a Texas judgment pursuant to the Uniform Act gave the judgment creditor "the same lien it would have had had the judgment been that of [a trial court] of New York." 460 N.Y.S.2d at 13, 446 N.E.2d at 769.

In *Salmeri v. Salmeri*, 554 P.2d 1244, 1250 (Wyo.1976), the Court held that a New Jersey judgment, when filed under the Uniform Act in Wyoming, "became a full and complete judgment having the same effect as any money judgment entered in any court of this state."

In *Jones v. Roach*, 118 Ariz. 146, 575 P.2d 345 (App.1977), the Court described the effects of filing a foreign judgment under the Uniform Act, holding that a Colorado judgment would be subject to the same procedures as a final judgment rendered in Arizona.

The Supreme Court of Alaska has stated that it will follow the same approach. "Regarding whether Washington or Alaska law governs the enforcement of the Washington judgment, we think that under the Uniform Enforcement of Foreign Judgments Act, Alaska law applies." *Hamilton v. Seattle Marine & Fishing Supply Co.*, 562 P.2d 333 (Alaska 1977). The Court notes that this is the rule expressed in the Restatement (Second) of *Conflict of Laws*, § 99, which states: The local law of the forum determines the methods by which a judgment of another state is enforced."

In Oklahoma there are at least two general methods of proceeding to enforce a sister state judgment. The obligee on the sister state judgment or decree may (1) proceed to register the judgment or decree under the Uniform Enforcement of Foreign Judgments Act (12 O.S.1981, § 719 et seq.) or (2) bring a common law action on the foreign judgment or decree. See *Hudson v. Hudson*, 569 P.2d 521 (Okl.App.1976).

If the common law action is followed the foreign judgment shall be "subject to the same procedures ... for ... vacating ... as a judgment of a district court of this state. 12 O.S.1981, § 721. Any Oklahoma judgment may be vacated as unenforceable if not executed upon within five years from rendition of said judgment. 12 O.S.1981, § 735.

The U.S. Supreme Court has held it a violation of the equal protection clause of the Constitution for a forum state to have different statutes of limitations for enforcement of foreign judgments and its own domestic judgments. In *Watkins v. Conway*, 385 U.S. 188, 87 S.Ct. 357, 17 L.Ed.2d 286 (1966), the Court said, "For the decision of this Court ... do not justify the discriminatory application of a statute of limitations to foreign actions."

In *Hamilton v. Seattle Marine & Fishing Supply*, 562 P.2d 333 (Alaska 1977), the creditor chose to file a lawsuit in the forum state for debt, utilizing the originating state's judgment as evidence of the debt. The Alaska Court held that under either procedure chosen by the creditor, i.e. suing on the rendering state's judgment or filing under the Act, the forum state's dormancy statute would apply. 562 P.2d at 337. Also see Restatement [Second] of *Conflicts of Law*, § 99: "The local law of the forum determines the methods by which a judgment of another state is enforced."

Thus, common sense and logic dictate that the judgment filed from a longer running state will follow the shorter term period. It is the procedure for enforcement that is being activated, not the validity of the originating jurisdiction of judgment.

To hold that a creditor in the instant case (Colorado) could wait nineteen and one-half

years, then file a Uniform Enforcement Act proceeding and expect comity, overlooks the procedures of the forum state (Oklahoma).

If one of the reasons for enactment of the Uniform Act was to provide all deliberate speed toward satisfaction of a judgment and/or custody of minors in exchange for a summary proceeding and equal protection, then we defeat the purpose of the Act itself by adhering to common law theories of debt enforcement.

"The primary consideration underlying such legislation [statutes of limitation] is undoubtedly one of fairness to the defendant. There comes a time when he ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations, and he ought not to be called on to resist when 'evidence has been lost, memories have faded, and witnesses have disappeared.' " [1]

■ We, therefore, hold that the rendition of judgment in the originating forum state starts the dormancy period running when the Uniform Act is called upon or brought into play. The Act in Oklahoma (12 O.S.1981, § 721) gives the *foreign* judgment the same effect as a judgment of *this* state.

■ It is clear, both from the language of the Uniform Act, and from the consistent interpretation placed thereon by the courts of the states which have adopted it, that a foreign judgment filed under the Act in Oklahoma will be treated, for enforcement purposes, just as if it were rendered in a district court in Oklahoma. As we said in *Joplin Corp. v. State ex rel. Grimes*, 570 P.2d 1161, 1163 (Okl.1977), "Under this statute [§ 721] after the judgment is filed it is treated as any other valid Oklahoma judgment."

■ We shall treat the instant Colorado judgment, filed in Oklahoma, just as if it

were rendered in Oklahoma on the same date it was rendered in Colorado.

Oklahoma's dormancy statute, 12 O.S. 1981, § 735, provides that a judgment "rendered" in a court of record in Oklahoma shall become dormant if no execution is issued thereon within five (5) years of judgment. Creditor argues that the instant judgment was rendered in Colorado, and that therefore the judgment is enforceable in Oklahoma so long as it is enforceable in Colorado.

We hold, however, that foreign judgments, when filed pursuant to the Uniform Act, become judgments of this state for the purpose of enforcement. Consequently, the language in § 735 which refers to judgments "rendered" in Oklahoma should be construed to include foreign judgments also. Therefore, a foreign judgment which is filed in Oklahoma becomes dormant five (5) years after it was rendered in the sister state, if execution was never issued on the judgment in Oklahoma. The instant judgment was rendered in Colorado in January of 1977; as no execution was issued thereon it became dormant in Oklahoma in January, 1982.

■ The date of filing of the foreign judgment is irrelevant in determining whether it has become dormant in Oklahoma. Judgment creditor herein filed the instant judgment two times. The first filing was in October of 1977, several months after the judgment was rendered in Colorado. The second filing was in December of 1982, more than five (5) years after the judgment was rendered. When the creditor filed in 1977, less than five (5) years remained in which the creditor could file an execution so as to prevent the judgment from becoming dormant. By the time the creditor filed in 1982, the Colorado judgment had become dormant, and the act of filing the judgment did nothing to revive

1. Note, "Developments in the Law: Statutes of Limitations", 63 Harvard Law Review 1177, 1185 (1950).

the judgment. The filing was effective, the Colorado judgment was still valid, but unless the creditor had execution issue within the five. (5) year period after the judgment was rendered, the judgment was unenforceable in Oklahoma.

## III.

Having found that the dormancy statute applies to foreign judgments filed in Oklahoma pursuant to the Uniform Act, we now consider whether the judgment became dormant thereunder. Creditor concedes that no writ of execution has ever been obtained on the judgment. Creditor argues that a partial payment by the debtor and a partial release by the creditor is "tantamount" to an execution. Creditor also contends that debtor is estopped to claim the benefits of the dormancy statute because the debtor asked the creditor not to enforce the judgment for a period of time.

■ Both of these arguments are without merit. First, a partial payment does not prevent the running of our dormancy statute. *Chandler-Frates & Reitz v. Kostich*, 630 P.2d 1287 (Okl.1981). Second, a judgment debtor is not estopped to raise the issue of dormancy, even if he makes representations which cause the creditor not to have a writ of execution issued. *Thomas v. Murray*, 174 Okl. 36, 49 P.2d 1080 (1935). The instant judgment became dormant in January of 1982.

## IV.

■ Creditor's next contention is that the district court violated the full faith and credit clause of the United States Constitution, Art. IV, § 1, because it refused to permit creditor to enforce the Colorado judgment in Oklahoma.

The Restatement (Second) of *Conflicts of Law*, § 118 (2), provides, "A valid judgment rendered in a State of the United States may be denied enforcement in a sister state if suit on the judgment is barred by the

sister state's statute of limitations applicable to judgments." *See, Watkins v. Conway*, 385 U.S. 188, 87 S.Ct. 357, 17 L.Ed.2d 286 (1966); *McElmoyle v. Cohen*, 38 U.S. (13 Pet.) 312, 10 L.Ed. 177 (1839).

Even though the Colorado judgment is now unenforceable in Oklahoma, it is still recognized. It is *res judicata*. See, Restatement (Second) of *Conflicts of Law*, § 118, Comment *C.*

■ Creditor's contention that the operation of the dormancy statute violates due process is likewise without merit. In granting the right to have a judgment lien, the legislature can prescribe conditions that must be met by a judgment creditor to prevent dormancy of his judgment. *Chandler-Frates & Reitz v. Kostich*, 630 P.2d 1287 (Okl.1981).

## V.

■ Creditor's last argument concerns the power of the Oklahoma legislature to take away a cause of action or to repeal an accrued right. The dormancy statute, 12 O.S.1981, § 735, was amended in 1981. In 1977, when creditor obtained and filed the judgment, § 735 provided that a dormant judgment "shall cease to operate as a lien on the estate of the judgment debtor." The 1981 amendment changed § 735 in that a dormant judgment "shall *become unenforceable and of no effect,* and shall cease to operate as a lien on the real estate of the judgment debtor." [emphasis added].

Creditor claims that the amendment, if applied to the instant judgment, violates Oklahoma Constitution Art. 5, §§ 52 and 54. Section 52 provides that the legislature shall have no power to take away any cause of action after suit has been commenced thereon. Section 54 provides that the repeal of a statute shall not affect any accrued right.

We are hard pressed to see how the 1981 amendment of the dormancy statute affected any accrued right of the judgment credi-

tor, or how the amendment took away any cause of action creditor had. The 1981 amendment changed the dormancy statute in a manner which merely made it consistent with the state of affairs existing since 1965. In 1965, the legislature repealed the revivor statutes. *See Palmer v. Belford,* 527 P.2d 589 (Okl.1974). Creditor had no right to bring a revival action on a dormant judgment in 1977 when the judgment was rendered, and it had no such right in 1981 when the dormancy statute was amended, and it had no such right in 1982 when the judgment became dormant.

The rulings of the district court are AFFIRMED.

HODGES, LAVENDER, DOOLIN, HARGRAVE and ALMA WILSON, JJ., concur.

BARNES, C.J., SIMMS, V.C.J., and OPALA and KAUGER, JJ., dissent.