1998 OK 39

**DRLLEVICH CONSTRUCTION, INC., Appellant,**

v.

**Mary A. STOCK, Appellee.**

No. 87598.

Supreme Court of Oklahoma.

May 12, 1998.

As Corrected May 27, 1998.

Amy L. Underwood, Gary G. Grisso, Tulsa, for Appellant.

Richard A. Shallcross, Brewster, Shallcross & DeAngelis, Tulsa, for Appellee.

SIMMS, Justice:

¶ 1 This appeal results from Drllevich Construction Company's attempt to enforce a Washington state judgment in Oklahoma, where the judgment debtor, Mary Stock, now lives, and presents this question:

¶ 2 "Is a valid and enforceable judgment rendered in a foreign state and registered in Oklahoma, pursuant to the Uniform Enforcement of Foreign Judgments Act, 12 O.S.1991 § 719 et seq., subject to Oklahoma's dormancy statute, 12 O.S.1991 § 735, to the extent that it would bar enforcement of the registered judgment in Oklahoma?" We hold enforcement is not barred by the dormancy statute.

¶3 The Court of Civil Appeals held enforcement of the Washington state judgment was barred by application of Oklahoma's dormancy statute. We have previously granted certiorari and now vacate the opinion of the Court of Civil Appeals and reverse and remand the instant cause to the trial court for further proceedings.

¶4 To the extent *First of Denver Mortgage Investors v. Riggs,* 1984 OK 36, 692 P.2d 1358, is in conflict with this opinion, it is overruled.

¶5 On July 6, 1995, Mary Stock was served a "Notice of Filing of Foreign Judgment," via certified mail. This was Drllevich's effort to file its foreign judgment and seek enforcement in Oklahoma, pursuant to the Uniform Enforcement of Foreign Judgments Act. 12 O.S.1991 § 719, et seq. The original civil judgment obtained in King County (State of Washington), was rendered on November 14, 1985; This judgment was not appealed. The judgment was the result of an embezzlement case in which Stock took over $82,000.00 from the construction company while employed as a bookkeeper from 1978 until 1982. There was a related criminal prosecution which resulted in Stock receiving a ten year probationary sentence, a $49,291.98 restitution requirement and six months in prison.[1]

¶6 Drllevich initiated foreclosure proceedings on Stock's Washington home in 1987, which yielded approximately $27,000.00 for the payment of the embezzlement debt. In addition, Stock made monthly restitution payments throughout her probation, which ended in 1994. Although the record is not clear regarding the precise amount, there remains an outstanding balance on the $82,000.00 debt which has not been paid.

¶7 *First of Denver Mortgage Investors v. Riggs* is the seminal case with regard to the application of Oklahoma's dormancy statute as it concerns a foreign judgment. In *Riggs,* a Colorado judgment was rendered on January 20, 1977. That judgment was filed in Oklahoma on October 17, 1977 pursuant to the Uniform Enforcement of Foreign Judgments Act. In 1982, an asset hearing was scheduled and the judgment holder submitted post-judgment interrogatories. On December 8, 1982, debtor filed a Motion to Quash the interrogatories and to hold the judgment dormant in accord with 12 O.S. 1981, § 735, Oklahoma's dormancy statute. Debtor's motion was granted and judgment creditor appealed. Section 735 provides:

> If execution is not issued and filed or a garnishment summons issued as provided in Section 759 of this title within five (5) years after the date of any judgment that now is or may hereafter be rendered in any court of record in this state, or if five (5) years has intervened between the date that the last execution was filed or a garnishment summons was issued as also provided in Section 759 of this title, such judgment shall become unenforceable and of no effect, and shall cease to operate as a lien on the real estate of the judgment debtor. Provided, that this section shall not apply to judgments against municipalities.[2]

¶8 Although still attempting to enforce the October 17, 1977 filing, the judgment holder refiled the Colorado judgment in Oklahoma on December 31, 1982. The debtor responded, filing a suggestion of dormancy on January 11, 1983. The district court granted debtor's motion to quash a second set of interrogatories and held that the refiling did not revive the Colorado judgment. The appeals were consolidated for review.

¶9 This Court found the Colorado judgment in question must be treated as if it

---

1. The $49,291.98 restitution requirement represented money stolen by Stock between June 1980 and December 1982, only two of the four years she apparently took money from Drllevich. The civil judgment for $82,554.14 is said to more closely represent the entire amount taken by Stock during her four years of embezzlement and thus includes the $49,291.98 outlined in the criminal judgment and sentence. An offset was included in the restitution agreement to insure that Ms. Stock would not be required to pay twice for those funds taken between 1980 and 1982.

2. § 735 was amended in 1997, effective date November 1, 1997. The statute as quoted above is as it read prior to amendment.

were rendered in Oklahoma on the date it was rendered in Colorado, making the judgment dormant in Oklahoma five years after it was rendered in the sister state, "if execution was never issued on the judgment in Oklahoma." *Id.* at 1362. As a result, the judgment became dormant in January 1982, five years after it was rendered in Colorado. By the time the judgment creditor filed for the asset hearing and presented interrogatories, the judgment was already dormant and the refiling in December 1982 did not revive the already dormant judgment. *Id.* at 1362–63.

¶ 10 *Riggs'* approach places its only real emphasis on the judgment's date of rendition in the originating state. Any ability to enforce the judgment in the state of origin plays no role in the ability to register the judgment for enforcement in Oklahoma under *Riggs*. This lack of focus on the original judgment's enforceability is not a universally shared approach. In fact, Oklahoma's position is a minority one.

¶ 11 The Uniform Enforcement of Foreign Judgments Act "shall be interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it." 12 O.S.1991 § 726. Oklahoma's minority position is such that it does not achieve the purpose expressly outlined in § 726, "to make uniform the law of those states which enact it." In addition, the current interpretation of the law under *Riggs* provides a framework within which judgment debtors may be able to shield themselves from legitimate judgments, simply by making Oklahoma their home.

¶ 12 We can find nothing in Oklahoma's Uniform Enforcement of Foreign Judgments Act or any other enactments of our Legislature indicating this is a public policy either adopted or encouraged by our state. In an effort to achieve the goals of § 726 and provide a framework within which legitimate judgments may be executed upon in a timely manner, *Riggs'* limited and unwavering focus on the judgment's rendition in the originating state must be reconsidered.

¶ 13 The oft cited *Pan Energy v. Martin,* 813 P.2d 1142 (Utah 1991) provides an example of the most often used policy regarding the time limitations within which a foreign judgment must be enforced. *Pan Energy* involved a judgment creditor's attempt to enforce an Oklahoma judgment in Utah.

¶ 14 In September 1982, Pan Energy obtained a judgment against Martin in the U.S. District Court for the Northern District of Oklahoma. *Id.* at 1143. In August 1987, Pan Energy registered the Oklahoma judgment in Utah pursuant to Utah's Uniform Enforcement of Foreign Judgments Act. Utah Code Ann. § 78–22a–2(2). Utah Code Ann. § 78–22a–2(2) is substantially similar to 12 O.S.1991 § 721, pertaining to the filing and status of foreign judgments.

> A judgment filed under this chapter has the same effect ... as a judgment of a district court of this state and is subject to enforcement and satisfaction in like manner.

Utah Code Ann. § 78–22a–2(2).

¶ 15 When the Oklahoma judgment was registered in Utah in August 1987, it was not dormant with respect to its possible enforcement in Oklahoma. The Utah court applied Utah Code Ann. § 78–22a–2(2) to the validly registered judgment and determined that its "statute require[d] foreign judgments to be treated as if they were local judgments *once they have been filed with the clerk of a district court.* Once filed, the foreign judgment is subject to the same procedures to attack or enforce it as a Utah judgment." *Id.* at 1144 (emphasis added).

¶ 16 The Utah Supreme Court found "*for the purposes of enforcement,* the filing of a foreign judgment under § 78–22a–2(2) *creates a new Utah judgment* which is governed by the Utah statute of limitations." *Id.* (emphasis added). As a result, a new Utah judgment was created in August 1987 and Utah's eight year statute of limitations was applied from the date of that new judgment, allowing for enforcement of the judgment in Utah until August 1995, eight years after its registration. *Id.; See* Utah Code Ann. § 78–22–1 (providing that a lien created by § 78–22–5 shall continue for eight years).

¶ 17 The Utah Supreme Court noted that its interpretation creating a new Utah judgment, upon the proper registration of a foreign judgment, was consistent with the approach taken by federal courts in their application of 28 U.S.C. § 1963, a similar federal registration statute.[3] The Utah court noted a line of federal cases which found a new judgment was created with the registration of a foreign judgment. *Id.* (citing *Stanford v. Utley*, 341 F.2d 265, 268 (8th Cir. 1965) (Judge, later Justice, Blackmun wrote, "We feel that registration provides, *so far as enforcement is concerned*, the equivalent of a new judgment of the registration court.", emphasis added); *United States v. Palmer*, 609 F.Supp. 544, 548 (E.D.Tenn.1985); *Dichter v. Disco Corp.*, 606 F.Supp. 721, 724 (S.D.Ohio 1984); *Anderson v. Tucker*, 68 F.R.D. 461, 463 (D.Conn.1975); *Juneau Spruce Corp. v. Int'l Longshoremen's & Warehousemen's Union*, 128 F.Supp. 715, 717 (N.D.Cal.1955)); *But see Robinson v. First Wyoming Bank*, 274 Mont. 307, 909 P.2d 689 (1995).

¶ 18 The Court of Appeals for the Western District of Missouri, applying Missouri law, made a finding similar to that of *Pan Energy*, viewing a foreign judgment filed in a Missouri court as a new judgment and applying Missouri's ten year statute of limitations from the effective date of that new Missouri judgment. *Walnut Grove Prod. v. Schnell*, 659 S.W.2d 6 (W.D.Mo.1983).

¶ 19 Other jurisdictions with holdings similar to that of *Pan Energy* include: The Texas Supreme Court dismissing an appeal for want of jurisdiction held that when a creditor proceeds under the Uniform Enforcement of Judgments Act, "the filing of the foreign judgment comprises both a plaintiff's original petition and a final judgment." *Walnut Equipment Leasing Co. v. Wu*, 920 S.W.2d 285, 286 (Tex.1996); The Supreme Court of Nevada, citing *Pan Energy v. Martin* and others, found "that when a party files a valid foreign judgment in Nevada, it constitutes a new action for the purposes of the statute of limitations." *Trubenbach v. Amstadter*, 109 Nev. 297, 849 P.2d 288, 290 (1993). *See also Galef v. Buena Vista Dairy*, 117 N.M. 701, 875 P.2d 1132 (N.M.Ct.App. 1994); *Mee v. Sprague*, 144 Misc.2d 1057, 545 N.Y.S.2d 268 (N.Y.Sup.1989); *Payne v. Claffy*, 281 S.C. 385, 315 S.E.2d 814 (S.C.Ct.App. 1984); *Warner v. Warner*, 9 Kan.App.2d 6, 668 P.2d 193, 195 (1983) ("registration of a foreign judgment which is enforceable when registered gives the judgment creditor a new and additional five years to execute, regardless of when the judgment was rendered in the foreign state.").

¶ 20 In keeping with *Pan Energy* and those jurisdictions which hold similarly, a foreign judgment which is enforceable at the time the judgment creditor registers the foreign judgment in Oklahoma will be considered, for the purposes of enforcement, as a new judgment of this state to which Oklahoma's five year dormancy statute will apply. Once filed, the foreign judgment becomes a judgment of this state and "shall [be] treat[ed] ... in the same manner as a judgment of the district court of any county of this state." 12 O.S.1991 721.

¶ 21 To the extent *First of Denver Mortgage Investors v. Riggs* is in conflict with this opinion, it is overruled.

■ ¶ 22 Judgment creditor, Drllevich Construction, contends Wa.St. § 6.17.020(4) applies in the instant case and serves to

---

3. A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. Such a judgment entered in favor of the United States may be so registered any time after judgment is entered. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

28 U.S.C. (Supp.1996) § 1963 (primary change in 1996 was the addition of "courts of appeal" and "bankruptcy courts" in allowing extraterritorial enforcement).

prolong the enforcement period for its judgment to a point ten years from the date Stock was released from probation. Wa.St. 6.17.020(4) provides that:

A party who obtains a judgment or order for restitution, crime victims' assessment, or other court-ordered legal financial obligations pursuant to a criminal judgment and sentence may execute the judgment or order any time within ten years subsequent to the entry of the judgment and sentence or ten years following the offender's release from total confinement as provided in chapter 9.94A RCW.

From the record presented to this Court, section 6.17.020(4) does not apply to the $82,-000.00 civil judgment registered by Drllevich in Oklahoma on July 6, 1995. The statute's language requires that the money judgment be an obligation rendered *"pursuant to a criminal judgment and sentence"* in order to entitle the judgment creditor to the extension privileges offered by § 6.17.020(4). The $49,-291.98 restitution required as part of Stock's criminal judgment is more properly considered under Wa.St. § 6.17.020(4), but not the $82,000.00 civil judgment.

¶ 23 Application of § 6.17.020(4) is not crucial to the enforcement of Drllevich's judgment, however, because Washington statute § 6.17.020(1) provides a ten year period within which to execute upon a judgment even without the prolonging provisions of § 6.17.020(4). Section 6.17.020(1) provides:

Except as provided in subsection (2), (3), and (4) of this section, the party in whose favor a judgment of a court of record of this state or a district court of this state has been or may be rendered, or the assignee, may have an execution issued for the collection or enforcement of the judgment at any time within ten years from the entry of the judgment.

Wa.St. § 6.17.020(1). Because Drllevich registered its Washington judgment in Oklahoma on July 6, 1995, within ten years of the November 14, 1985 original judgment, the foreign judgment was enforceable at the time

of its registration. As a result, Drllevich has an Oklahoma judgment as of July 6, 1995 and the dormancy provisions of 12 O.S.1991 § 735 apply from that date of registration.

¶ 24 Accordingly, the instant cause is reversed and the matter remanded for further proceedings

¶ 25 CERTIORARI PREVIOUSLY GRANTED. COURT OF APPEALS OPINION VACATED. REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

KAUGER, C.J., SUMMERS, V.C.J., and HODGES, OPALA and WATT, JJ., concur.

ALMA WILSON, J., concurs in judgment.

LAVENDER and HARGRAVE, JJ., dissent.

