2006 OK CIV APP 152

**YORKSHIRE WEST CAPITAL, INC., Plaintiff/Appellee,**

v.

**George RODMAN, Defendant/Appellant.**

**No. 102,638.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 8, 2006.

Certiorari Denied Dec. 4, 2006.

Drew Neville, Lincoln C. McElroy, Hartzog, Conger, Cason & Neville, Oklahoma City, OK, for Plaintiff/Appellee,

B.J. Brockett, Oklahoma City, Oklahoma, and Barry K. Roberts, Norman, OK, for Defendant/Appellant.

KENNETH L. BUETTNER, Chief Judge.

¶1 Defendant/Appellant George Rodman appeals from the trial court's denial of his Motion to Vacate a foreign judgment filed by Plaintiff/Appellee Yorkshire West Capital, Inc. (Yorkshire). Yorkshire obtained a judgment against Rodman in Texas in 1994. Yorkshire filed its Texas judgment in Oklahoma in 1996, but did not seek to execute or renew the Oklahoma judgment. Yorkshire later took action in Texas to renew the Texas judgment for an additional ten years. Yorkshire filed the renewed Texas judgment in Oklahoma in 2005. Rodman sought to vacate the filing of the judgment based on his claim it had been dormant since 2001 and could not be revived in Oklahoma. The trial court denied Rodman's motion. We find nothing to prevent Yorkshire from filing its Texas judgment in Oklahoma a second time while it remained valid and enforceable in Texas. We therefore affirm.

¶2 In this case, the facts are undisputed and the issue is therefore one of law: whether a foreign judgment, which was filed in Oklahoma in 1996, may be refiled in Oklahoma while it is still valid and enforceable in the state in which it was granted, notwithstanding 12 O.S.2001 § 735, which provides that judgments become unenforceable after five years when specified collection activities have not occurred. We review issues of law de novo. *3M Dozer Service, Inc. v. Baker,* 2006 OK 28, ¶8, 136 P.3d 1047.

¶3 On November 28, 1994, Yorkshire obtained judgment against Rodman and other defendants for $2,959,868.02 in the District Court of Dallas County, Texas ("Texas Judgment").[1] Yorkshire filed the Texas Judgment in the Oklahoma County District Court March 1, 1996.[2] The parties agree that Yorkshire did not take any action to execute on or renew the judgment in Oklahoma within five years of March 1, 1996 and it therefore became unenforceable pursuant to 12 O.S.2001 § 735(A).[3]

¶4 On September 14, 2004, Yorkshire filed a writ of execution on the judgment in Case No. 94–03613–F in the Dallas County District Court. The writ of execution renewed the Texas Judgment for an additional ten years from that date.[4] Yorkshire then filed July 8,

---

1. The Texas Judgment was entered in Case No. 94–3613.

2. The judgment in Texas Case No. 94–3613 was filed under Case No. CJ–96–1428 in Oklahoma County.

3. Section 735 provides:

   A. A judgment shall become unenforceable and of no effect if, within five (5) years after the date of filing of any judgment that now is or may hereafter be filed in any court of record in this state:
   1. Execution is not issued by the court clerk and filed with the county clerk as provided in Section 759 of this title;
   2. A notice of renewal of judgment substantially in the form prescribed by the Administrative Director of the Courts is not filed with the court clerk;
   3. A garnishment summons is not issued by the court clerk; or
   4. A certified copy of a notice of income assignment is not sent to a payor of the judgment debtor.

   B. A judgment shall become unenforceable and of no effect if more than five (5) years have passed from the date of:
   1. The last execution on the judgment was filed with the county clerk;
   2. The last notice of renewal of judgment was filed with the court clerk;
   3. The last garnishment summons was issued; or
   4. The sending of a certified copy of a notice of income assignment to a payor of the judgment debtor.
   C. This section shall not apply to judgments against municipalities or to child support judgments by operation of law

4. V.T.C.A., Civil Practice and Remedies Code, § 34.001. The Texas statute provides:
   § 34.001. No Execution on Dormant Judgment
   (a) If a writ of execution is not issued within 10 years after the rendition of a judgment of a court of record or a justice court, the judgment is dormant and execution may not be issued on the judgment unless it is revived.
   (b) If a writ of execution is issued within 10 years after rendition of a judgment but a sec-

2005 its Notice of Filing of Foreign Judgment,[5] in which it again filed the Texas Judgment, this time under Case No. CJ–2005–5276, in Oklahoma County.

¶5 Rodman responded to the 2005 filing of the Texas Judgment in Oklahoma County with his Motion to Vacate. Rodman argued that pursuant to § 735, once the judgment became unenforceable in Oklahoma following the 1996 filing, it could not be revived in Oklahoma by refiling.

¶6 *Drllevich Construction, Inc. v. Stock*, 1998 OK 39, 958 P.2d 1277, is the Oklahoma Supreme Court's most recent decision on the application of § 735 to foreign judgments. In *Drllevich*, the court determined that a foreign judgment which is valid and enforceable in the state in which it was issued is not barred by the Oklahoma dormant judgment statute, § 735. Prior to *Drllevich*, Oklahoma followed the minority rule, which was that the five years allowed by § 735 began to run on the date the foreign judgment was entered in the foreign state, so that a judgment holder who failed to register and execute on his judgment in Oklahoma within five years of first obtaining the foreign judgment was unable to enforce his judgment in Oklahoma, even if the judgment remained enforceable in the state of origin. *Id.* at 1280, citing *First Denver Mortgage Investors v. Riggs*, 1984 OK 36, 692 P.2d 1358 as the seminal case on the issue of application of the dormancy statute to foreign judgments in Oklahoma.

¶7 In *Riggs*, the Oklahoma Supreme Court looked to 12 O.S.1981 § 721, part of the Uniform Enforcement of Foreign Judgments Act (the Act),[6] which provides that a foreign judgment filed in Oklahoma "has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of a district court of this state and may be en-

forced or satisfied in like manner." The court took from that language that a foreign judgment was treated as an Oklahoma judgment from the date it was rendered in the foreign state, and, like an Oklahoma judgment, it would become unenforceable within five years of the date it was issued, regardless of when it was registered in Oklahoma. 692 P.2d at 1360.

¶8 In *Drllevich*, the court noted that the rule announced in *Riggs* focused entirely on the date the judgment was first entered in the issuing state, and failed to consider whether the judgment remained enforceable in the issuing state. 958 P.2d at 1280. The court noted that the *Riggs* analysis was a minority view and therefore failed to accomplish the purpose of the Act to "make uniform the law of those states which enact it." *Id.*, citing 12 O.S.2001 § 726. The court in *Drllevich* also noted that the *Riggs* rule allowed judgment debtors to shield themselves from legitimate foreign judgments by residing in Oklahoma.[7] *Id.*

¶9 The *Drllevich* Court noted that Utah had a statute similar to § 721, providing that foreign judgments have the same effect and are enforceable in the same way as Oklahoma judgments. The court recognized the Utah Supreme Court had interpreted this statute to mean that " 'for the purposes of enforcement, the filing of a foreign judgment … creates a new Utah judgment which is governed by the Utah statute of limitations.' " *Id.*, citing *Pan Energy v. Martin*, 813 P.2d 1142, 1144. The Utah court held that a new Utah judgment was created when a judgment, enforceable in the issuing state, was filed in Utah. This new judgment remained valid and enforceable for eight years from the date it was filed in Utah, pursuant to Utah's dormancy statute. *Id.*

ond writ is not issued within 10 years after issuance of the first writ, the judgment becomes dormant. A second writ may be issued at any time within 10 years after issuance of the first writ.

5. Notice of filing a foreign judgment is required by 12 O.S.2001 § 722.

6. 12 O.S.2001 § 719– § 726.

7. Indeed, in *Riggs*, the court stated

Thus, common sense and logic dictate that the judgment filed from a longer running state will follow the shorter term period. It is the procedure for enforcement that is being activated, not the validity of the originating jurisdiction of judgment. To hold that a creditor in the instant case (Colorado) could wait nineteen and one-half years, then file a Uniform Enforcement Act proceeding and expect comity, overlooks the procedures of the forum state (Oklahoma).

¶ 10 In *Pan Energy*, the creditor filed an Oklahoma judgment in Utah one month before the end of the Oklahoma five year dormancy period. The Utah court found that because the Oklahoma judgment was enforceable in Oklahoma at the time it was filed in Utah, it became a new Utah judgment on that date and was subject to Utah's 8 year period for enforcement. *Id.* The court in *Drllevich* recognized other states which had reached the same result and held that:

a foreign judgment which is enforceable at the time the judgment creditor registers the foreign judgment in Oklahoma will be considered, for the purposes of enforcement, as a new judgment of this state to which Oklahoma's five year dormancy statute will apply. Once filed, the foreign judgment becomes a judgment of this state and "shall [be] treat[ed] ... in the same manner as a judgment of the district court of any county of this state."

*Id.* at 1281, citing 12 O.S.1991 § 721. The court expressly overruled *Riggs*, to the extent it conflicted with the opinion in *Drllevich*.[8] *Id.* The court noted the issuing state had a ten year period in which to enforce judgments and concluded that:

(b)ecause Drllevich registered its Washington judgment in Oklahoma on July 6, 1995, within ten years of the November 14, 1985 original judgment, the foreign judgment was enforceable at the time of its registration. As a result, Drllevich has an Oklahoma judgment as of July 6, 1995 and the dormancy provisions of 12 O.S.1991 § 735 apply from that date of registration.

*Id.* at 1282. So, under the *Riggs* analysis, a foreign judgment was treated as an Oklahoma judgment from the date it was issued in the foreign state, but after *Drllevich*, a foreign judgment is treated as new Oklahoma judgment from the date it is filed in Oklahoma, so long as it was enforceable in the issuing state at the time it was filed in Oklahoma.

¶ 11 Under the *Drllevich* rule, Yorkshire's Texas Judgment could have been filed in Oklahoma for the first time when Yorkshire filed it here in 2005 because it remained valid and enforceable in Texas at that time. The novel issue presented here is whether the Texas Judgment could be filed in Oklahoma a second time, after the § 735 five years had run, but while it remained valid and enforceable in the issuing state.

¶ 12 Rodman contends that Oklahoma allows only one five year period in which to enforce a judgment, after which it is dormant and unenforceable. He asserts the five year period began to run March 1, 1996, when the Texas Judgment was first filed here, following which the judgment was unenforceable by the terms of § 735 and could not be revived by refiling. Rodman argues that after the expiration of five years from the first registration, the fact of dormancy is effectively *res judicata* and cannot be disregarded by filing the same foreign judgment a second time.

¶ 13 In *Riggs*, after five years from the date the judgment issued, but while the judgment remained enforceable in the issuing state, the creditor refiled the foreign judgment in Oklahoma, seeking an additional five years in which to enforce the judgment. The court stated that the judgment could not be revived by refiling. However, the court did not offer analysis or reasoning for this statement. And, in *Riggs*, as noted above, the rule was that any foreign judgment became dormant in Oklahoma five years from the date it was first issued, regardless of whether it remained enforceable in the issuing state. Therefore, *Riggs* differs from this case in that in *Riggs*, when the creditor refiled the judgment, the judgment would not have been acceptable, even as a first filing, at the time of the second filing, because more than five years had passed since the judgment was originally entered in Colorado. Relevant to the outcome of this case therefore is whether the *Riggs* decision's statements on refiling a judgment are in conflict with *Drllevich*. In *Riggs*, the court stated:

The date of filing the foreign judgment is irrelevant in determining whether it has become dormant in Oklahoma. Judgment creditor herein filed the instant judgment two times. The first filing was in October

---

8. In overruling *Riggs*, the *Drllevich* Court also effectively overruled *Hall v. Oklahoma Factors, Inc.*, 1996 OK CIV APP 58, 923 P.2d 1192, which relied on *Riggs* to hold that a foreign judgment filed in Oklahoma became dormant five years from the date it was issued in the foreign state.

of 1977, several months after the judgment was rendered in Colorado. The second filing was in December of 1982, more than five (5) years after the judgment was rendered. When the creditor filed in 1977, less than five (5) years remained in which the creditor could file an execution so as to prevent the judgment from becoming dormant. *By the time the creditor filed in 1982, the Colorado judgment had become dormant, and the act of filing the judgment did nothing to revive the judgment. The filing was effective, the Colorado judgment was still valid, but unless the creditor had execution issue within the five (5) year period after the judgment was rendered, the judgment was unenforceable in Oklahoma.*

692 P.2d at 1362–1363. The *Riggs* statement on refiling is accordingly not helpful to an analysis of this issue under the current interpretation of the Act. We find nothing in the Act which bars a foreign judgment from being filed again in Oklahoma so long as it remains enforceable in the issuing state. Consistent with this view is the notion that the filing of a foreign judgment under the Act creates a new Oklahoma judgment. *Drllevich,* 958 P.2d at 1281. Both the original judgment and the new judgment will then be viewed independently for purposes of collection, renewal, and enforceability. That is, the Texas Judgment will be governed by Texas's dormancy statute of 10 years, and the Oklahoma judgment will be governed by Oklahoma's five year dormancy statute. There is no question that after five years of inaction, the Oklahoma judgment, created by registration in 1996, became unenforceable. But there is no reason that another Oklahoma judgment may not be created by a second filing under the Act, so long as the original Texas Judgment remains valid and enforceable. The judgment debtor is no worse off, and the judgment creditor must still comply with the filing requirements and potential defenses found in 12 O.S.2001 § 721.

¶ 14 A decision of the U.S. Supreme Court suggests that a foreign judgment may be refiled while it is still valid in the state of origin. In *Watkins v. Conway,* 385 U.S. 188, 87 S.Ct. 357, 17 L.Ed.2d 286 (1966), the plaintiff obtained a Florida judgment against the defendant, and more than five years later sued on the judgment in Georgia. At that time, Georgia had a statute which provided that suits on a foreign judgment must be brought within five years, and it had a longer limit for bringing suits on domestic judgments. The trial court granted summary judgment to the defendant, and the plaintiff appealed, claiming that the different treatment of foreign and domestic judgments violated the full faith and credit and equal protection clauses of the U.S. Constitution. The Georgia Supreme Court rejected these arguments. The U.S. Supreme Court noted that the bare differences in the statutory treatment of the two types of judgments might pose constitutional issues, but it recognized that Georgia had interpreted the statutes in a way that prevented constitutional violations. The court noted that the Georgia statute "bars suits on foreign judgments only if the plaintiff cannot revive his judgment in the State where it was originally obtained .... the relevant date ... is not the date of the original judgment but rather it is the date of the latest revival of the judgment." *Id.* at 189, 87 S.Ct. 357. The court concluded that as interpreted by the Georgia courts, the plaintiff only needed to return to Florida, which has a 20 year enforcement period, revive his judgment and return to Georgia within five years to file suit on his judgment. The Supreme Court went on to explain that because the plaintiff had the opportunity to revive the judgment in Florida, the Georgia statute did not discriminate against the Florida judgment, but instead focused on the law of Florida. "If Florida had a statute of limitations of five years or less on its own judgments, the (plaintiff) would not be able to recover (in Georgia). But this disability would flow from the conclusion of the Florida legislature that suits on Florida judgments should be barred after that period." *Id.* at 190, 87 S.Ct. 357. The court explained that by looking to Florida for the limitations period of Florida judgments, Georgia gave full faith and credit to Florida's judgments. Likewise, the court found no equal protection problem where Florida's laws determined the validity of Florida judgments in Georgia. *Id.* Having found the plaintiff could revive his judgment in Florida and then refile it in

Georgia, the Supreme Court affirmed the summary judgment in favor of the defendant. This holding is important to the issue of *res judicata* raised by Rodman. Clearly if the affirmed summary judgment in *Watkins* was not seen as barring a later suit on the revived judgment based on *res judicata*, it is difficult to determine how the simple passage of the dormancy period can amount to *res judicata* to bar filing of a judgment which is enforceable in the issuing state.

¶ 15 In *Riggs*, the court indicated, as support for its decision, that it would be unfair for a party who obtained a judgment in a state with a twenty year enforcement period to wait nineteen years before filing the judgment in Oklahoma. *Drllevich* recognized an opposite policy goal, however, in favor of satisfaction of judgments. The *Drllevich* Court indicated that the longer period offered by the issuing state was applicable and discouraged judgment debtors from seeking refuge in Oklahoma or other states with short enforcement periods. This policy shift, along with the statements in *Drllevich* that a foreign judgment filed in Oklahoma becomes a new Oklahoma judgment, and that the essential element is whether the judgment remained enforceable in the issuing state, suggest that the trial court here correctly determined that although the original filing of the judgment in Oklahoma was dormant five years after 1996, Yorkshire could refile its renewed judgment as a new Oklahoma judgment so long as it remained valid and enforceable in Texas.[9]

¶ 16 On *de novo* review, we find that the law in Oklahoma requires that a foreign judgment which is valid and enforceable in the issuing state may be filed as a new judgment in Oklahoma, even where the same foreign judgment has previously been filed

and become dormant in Oklahoma. The judgment's validity in the issuing state is paramount, and nothing in the Act expressly prohibits a second filing of a judgment. In this case, the Texas Judgment Yorkshire filed in Oklahoma in 1996 became an Oklahoma judgment which became dormant after five years without execution. But Yorkshire's Texas Judgment remained valid and enforceable in 2005 and Yorkshire properly filed it a second time in Oklahoma under a new case number. That filing resulted in a second Oklahoma judgment which remains enforceable pursuant to § 735.

AFFIRMED.

ADAMS, J., and MITCHELL, P.J., concur.

---

9. While not raised by Rodman here, we recognize that satisfaction of a judgment is a ground for vacating a foreign judgment. *Baldwin v. Heinold Commodities, Inc.*, 363 N.W.2d 191, 194 (S.D.1985) (When foreign judgment has been appropriately filed grounds for vacating it are limited to lack of personal or subject-matter jurisdiction of rendering court, fraud in procurement of judgment, satisfaction, lack of due process, or other grounds that make judgment invalid or unenforceable; however, nature, amount, or other merits of judgment cannot be relitigated in state in which enforcement is sought.) The Oklahoma Court of Civil Appeals has stated that a

dormant judgment is deemed satisfied as a matter of law. *Lawrence Systems, Inc. v. Superior Feeders, Inc.*, 1992 OK CIV APP 87, 837 P.2d 488, 490 ("a judgment must be enforced by execution as per the statute and within the statutory period or it is deemed satisfied as a matter of law.") *Lawrence* also holds, however, that dormancy is procedural, not an accrued right. *Id.* Based on the analysis in *Drllevich*, however, that a foreign judgment becomes a new judgment when it is filed, we are unpersuaded to follow the *Lawrence dicta* which is not supported by authority nor analysis. Section 735 speaks in terms of unenforceability rather than satisfaction.