502 A.2d 200

**NOBEL WELL SERVICE, INC., Appellant**

v.

**PENN ENERGY, INC.**

Superior Court of Pennsylvania.

Argued March 18, 1985.

Filed Dec. 13, 1985.

268

Peter M. Suwak, Washington, for appellant.

Harold V. Fergus, Jr., Washington, for appellee.

Before BROSKY, ROWLEY and FEENEY, JJ.*

## OPINION OF THE COURT

ROWLEY, Judge:

We are required, in this appeal from an order striking the entry of a judgment transferred from the state of Ohio to Washington County, Pennsylvania, to determine what docket entries from the foreign state must be filed with the

---

\* Judge John M. Feeney of the Court of Common Pleas of Allegheny County, Pennsylvania, is sitting by designation.

judgment in Pennsylvania. Since we have concluded that the trial court erred in holding that *all* of the foreign jurisdiction's docket entries must be filed, we reverse.

During May and June of 1981, appellant, Nobel Well Service, Inc., serviced oil and gas wells in Ohio which were owned by appellee Penn Energy, Inc. In October, 1981, after payment for the services was overdue, appellant filed a complaint in the Common Pleas Court of Belmont County, Ohio. After discovery procedures were completed and pre-trial conferences were held, appellee informed the court that it would not contest the suit. On June 9, 1983, a non-jury trial was held, the result of which was a judgment entered in favor of appellant in the amount of $49,093.91, plus interest.

On July 11, 1983, appellant transferred the Ohio judgment to Washington County, Pennsylvania pursuant to the Uniform Enforcement of Foreign Judgments Act [the Act]. 42 Pa.Cons.Stat. § 4306. The record shows that appellant filed an affidavit of the judgment creditor, a "Certificate of Judgment for Lien upon Lands and Tenements", and a certified copy of a document entitled, "DOCKET ENTRY",[1] which was signed by the Honorable Harold B. Thomas, Judge of the Court of Common Pleas of Belmont County. Appellant then issued execution against oil and gas leases owned by appellee in Washington County.

According to the March 21, 1984 Opinion of the trial court, the following then transpired:

> In response [to appellant's published notice of execution, appellee] petitioned the Washington County Court of Common Pleas to stay the execution set for December 2,

1. This document states:
This case having been regularly assigned for trial on June 9, 1983, was heard by the Court without a Jury. The Defendant failed to appear in person or by Counsel. Upon consideration of the evidence the Court finds on the issues in favor of the plaintiff and against the Defendant. Judgment is hereby rendered in favor of the Plaintiff, Nobel Well Service, Inc., and against the Defendant, Penn Energy, Inc., in the sum of $49,093.91 together with interest thereon at the rate of 10% per annum from June 16, 1981, until paid. Defendant is further ordered to pay the costs of this proceeding.

1984.[2] On November 29, 1984,[3] the Honorable Thomas D. Gladden of this court granted the stay until January 6, 1984, with the proviso that all additional costs be assessed against the [appellee] and that no further extensions be granted.

During motions court on December 29, 1983 [appellee] presented a petition to strike the Ohio judgment for [appellant's] failure to comply with 42 Pa.C.S. § 4306 and to stay the execution set for Jan. 6, 1984.

\* \* \* \* \*. \*

To delineate the law governing the issue of whether the failure to transfer all the docket entries with a copy of the foreign judgment was fatal to the transfer, the court directed the attorneys to file briefs by January 6, 1984.

\* \* \* \* \* \*

The court ... informed the attorneys that a decision based upon the briefs and argument would be rendered by January 16, 1984.... With reference to the return date, it was the impression of the court that all the parties understood that in the event the petition to strike was denied, January 20, 1984, would be the date the parties returned to consider the ramifications of the denial.

The court entered an order on January 17, 1984, granting appellee's petition to strike, holding that "the judgment as entered in this Court is not in compliance with the procedural requirements of Sec. 4306(b) in that the docket entries and some of the outstanding documents were not properly certified...." Appellant's timely exceptions were denied and appellant now appeals from the January 17, 1984 order.

█ A petition to strike a judgment may be granted only when a fatal defect appears on the face of the record. *Ruehl v. Maxwell Steel Co., Inc.*, 327 Pa.Super. 39, 474

2. The record reflects that this date is in error and should be December 2, 1983.

3. The record reflects that this date is in error and should be November 29, 1983.

A.2d 1162 (1984); *Liquid Carbonic Corp. v. Cooper & Reese, Inc.,* 272 Pa.Super. 462, 416 A.2d 549 (1979). Moreover, appellate review of a trial court's decision to strike a judgment requires that we determine whether the trial court abused its discretion. "[The trial] court abuses its discretion when it misapplies the law or when a manifestly unreasonable, biased, or prejudiced result is reached." *Girard Trust Bank v. Remick, et ux.,* 215 Pa.Super. 375, 377, 258 A.2d 882, 884 (1969), citing *Mielcuszny, et ux. v. Rosol,* 317 Pa. 91, 176 A. 236 (1934). *Accord, Banks v. Banks,* 275 Pa.Super. 439, 418 A.2d 1370 (1980).

On appeal, appellant presents three issues for our review. Appellant's first issue is stated as follows:

> 1. Does Pennsylvania's Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S.A. Section 4306(b) require the filing of all docket entries?

The fatal defect in the judgment, as viewed by the trial court, was appellant's failure to comply with the statutory requirements for transferring a foreign judgment to Pennsylvania, as set forth in section 4306 of the Act. Specifically, the trial court found that appellant failed to comply with section § 4306(b) because it failed to transfer *all* of the foreign docket entries to Washington County.

In its brief, appellee states that "There is no question this section of the act was not complied with, as the docket entries surrounding the Foreign Judgment were not filed." On the contrary, it is compliance with this section of the Act which is at issue: what docket entries must one file to comply with the requirement of filing "the docket entries *incidental*" to the judgment. (Emphasis added.)

▮ Thus, our task, on review, is to interpret § 4306(b) of the Act to determine whether the filing of *all* foreign docket entries is required when transferring a foreign judgment to Pennsylvania. Section 4306(b) provides:

> A copy of any foreign judgment *including the docket entries incidental thereto* authenticated in accordance with act of Congress or this title may be filed in the office

of the clerk of any court of common pleas of this Commonwealth. A judgment so filed *shall be a lien as of the date of filing and* shall have the same effect and be subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of any court of common pleas of this Commonwealth and may be enforced or satisfied in like manner. (Emphasis added.)

Although twenty-one of the United States have adopted a form of the 1964 version of the Uniform Act, only Pennsylvania has added the emphasized phrases in the above passage.[4] With the exception of the emphasized phrases, § 4306(b) is identical to § 2 of the 1964 Revised Uniform Enforcement of Foreign Judgments Act, as drafted by the National Conference of Commissioners on Uniform State Laws.[5] Coincidentally, it is the first added phrase which now requires interpretation.

As the parties have noted in their briefs, the meaning of this phrase raises a question of first impression in our appellate courts. Also, because this phrase is not found in any other state's version of the Uniform Enforcement of Foreign Judgments Act, no other state's courts have had reason to pass on its meaning. Appellee argues that the phrase "including the docket entries incidental thereto" requires *all* the docket entries from the foreign jurisdiction to be transferred to Washington County, Pennsylvania. Appellee supports its position by citing several Common Pleas Court decisions in this Commonwealth.[6] However, those cases dealt with judgment creditors who had not filed *any* docket entries, rather than judgment creditors who had filed some, but not *all* docket entries. In addition, we note that in each of those cases the trial court cited Pa.R.C.P. 3002 as support for its position. Rule 3002, which governs the transfer of judgments from county to county within

---

**4.** *See,* UNIFORM ENFORCEMENT OF FOREIGN JUDGMENTS ACT, 1964 Revised Act, § 2, 13 U.L.A. 178 (1964).

**5.** *Id.,* 177.

**6.** *Adler v. Krawitz,* 2 Pa.D. & C.3d 491 (1974); *Forehand v. Centennial Foods of Virginia, Inc.,* 8 Pa.D. & C.3d 794 (1978); *Stewart v. Savage,* 58 Del. County 534 (1970).

Pennsylvania, states in part that "A judgment may be transferred to another county by filing of record a certified copy of *all of the docket entries in the action* and a certification of the amount of the judgment." (Emphasis added.) Rule 3002 was adopted March 30, 1960 and became effective November 1, 1960. The Pennsylvania version of the Uniform Act, was first approved on December 22, 1965 (P.L. 1157), and reenacted on July 9, 1976, effective June 27, 1978. In comparison, Rule 3002 requires "*all* of the docket entries in the action" but the Act requires only that "the docket entries *incidental*" to the judgment be filed. The words "incidental" to the "judgment" appear to have been consciously selected for their specific import by the General Assembly, for they were chosen to be added to the Pennsylvania version of the Uniform Act, and were not part of the general Uniform Act. If the General Assembly had intended to enact the same language (and meaning) as the Supreme Court did in Pa.R.C.P. 3002, it could more clearly have done so. Thus, neither Pa.R.C.P. 3002 nor the cases cited by appellee support its interpretation of § 4306(b).

Alternatively, appellant suggests that the Act only requires the judgment creditor to transfer a copy of the docket entries which directly affect the judgment; that is, those that were filed pursuant to, or after, the entry of judgment. Appellant reasons that the requirement was added to Pennsylvania's version of the Act so that the transferee court in Pennsylvania could be certain that after entry of the judgment in the foreign state, it had not been satisfied, levies had not accrued, or supplemental proceedings had not taken place. We agree.

In considering the actual language of § 4306(b), we note that *Black's Law Dictionary* defines "incidental" as "Depending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal...."[7] *See, Protective Motor Service Company, et al. v. P.U.C. and Edward*

7. BLACK'S LAW DICTIONARY, 686 (rev. 5th ed. 1979).

*J. Ring Detective Agency, Inc., Intervenor,* 4 Pa. Commonwealth 75, 78, 286 A.2d 30, 31 (1971). Thus, in the statement "A copy of any foreign judgment including the docket entries incidental thereto ... may [8] be filed in the office of the clerk of any court of common pleas of this Commonwealth", it would appear that *only* the docket entries depending upon or appertaining to the *judgment* need be filed. Satisfaction of the judgment, liens against the judgment, and supplemental proceedings to enforce a judgment are incidental to it, for if there was no judgment, none of these things would occur and could not, therefore, be docketed. On the other hand, the filing of pleadings, motions, non-judgment orders, and proof of service are all independent pre-judgment acts which are not dependent upon the judgment.

■ In the instant proceedings, appellant filed a certified copy of the Ohio judgment, a certified copy of the Ohio judgment docket entry, and an affidavit of the judgment creditor in Washington County. The filing of certified copies of the judgment docket entry and all subsequent docket entries is sufficient to fulfill the Act's requirement of filing docket entries "incidental" to the judgment. In this case, there were no subsequent docket entries, so by filing a certified copy of the judgment docket entry alone, appellant filed the docket entries *incidental* to the judgment. We hold, therefore, that the filing requirements of section 4306(b) have been met.

An analysis of the considerations set forth in the Statutory Construction Act, 1 Pa.Cons.Stat. § 1921(c) supports this conclusion. The National Conference of Commissioners

8. A judgment entered in another state may be transferred to and enforced in Pennsylvania in one of two methods. The traditional method has been the commencement of an assumpsit action, the subject of which is the foreign judgment. The alternative is the statutory method delineated in 42 Pa.Cons.Stat. § 4306. Because there *is* a choice of methods, the word "may" is used in 4306(b) to instruct the reader as to what he or she *must* do *if he or she elects the statutory method* of enforcement. *See,* 42 Pa.Cons.Stat. § 4306(e).

on Uniform State Laws, the drafters of the Uniform Enforcement of Foreign Judgments Act, prefaced the Uniform Act by stating:

> Court congestion is a problem common to all states. Overcrowded dockets, overworked judges and court officials, with attendant delays, inevitably tend to lower standards for the administration of justice. One of the things that contributes to calendar congestion is the Federal necessity of giving full faith and credit to the judgments of courts of other states. U.S. Const. art. IV, § 1. While there is no constitutional requirement that a debtor who has had a full due process trial in one state need be given a second full scale trial on the judgment in another state, this is the only course generally available to creditors.

> The usual practice requires that an action be commenced on the foreign judgment. The full procedural requirements apply to the second action.

> \* \* \* \* \* \*

> This 1964 revision of the Uniform Enforcement of Foreign Judgments Act adopts the practice which, in substance, is used in Federal courts. *It provides the enacting state with a speedy and economical method of doing that which it is required to do by the Constitution of the United States. It also relieves creditors and debtors of the additional cost and harassment of further litigation* which would otherwise be incident to the enforcement of the foreign judgment. This act offers the states a chance to achieve uniformity in a field where uniformity is highly desirable.[9] (Emphasis supplied.)

This statement highlights the necessity for the Act, the mischief to be remedied, and the object to be attained.

In the Federal courts, one needs only to file a certified copy of a judgment to sufficiently register it in a different

9. UNIFORM ENFORCEMENT OF FOREIGN JUDGMENTS ACT, 1964 Revised Act, Commissioners' Prefatory Note, 13 U.L.A. 173–4 (1964).

district. "A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." [10]

The expense and time required to file *all* docket entries from the foreign state, including those which are not *incidental* to the judgment itself, would not be consistent with an Act promulgated to provide "the enacting state with a speedy and economical method of doing that which it is required to do by the Constitution of the United States." In this case, according to appellant, there are 23 pages of docket entries that precede the entry of the judgment. Although the language in question is not part of the Uniform Act, the "occasion and necessity" [11] for the Pennsylvania version of the Act is nevertheless the same. It would be inappropriate [12] to construe the act so as to impose costly and possibly burdensome requirements.

Appellee argues, however, that in order for the foreign judgment to be entitled to full faith and credit in Pennsylvania, it is necessary that *all* docket entries be filed with the judgment. The argument is that the burden is on the judgment creditor to establish that the basic due process rights of the judgment debtor were recognized and protected in the foreign jurisdiction. In order to meet that burden, the appellee asserts it is necessary to file *all* of the docket entries from the foreign jurisdiction.

There is no question that, in determining whether a foreign judgment is entitled to full faith and credit under the United States Constitution, U.S. CONST. art. IV, § 1, Pennsylvania may inquire into the questions of the foreign state's jurisdiction and whether the foreign judgment was obtained in derogation of the debtor's basic due process rights, that is, whether the debtor had an opportunity to

10. 28 U.S.C. § 1963.
11. *See*, 1 Pa.Cons.Stat. § 1921(c)(1).
12. *See*, 1 Pa.Cons.Stat. § 1922(1).

appear and defend. *Old Wayne Mut. L. Assoc. v. McDonough*, 204 U.S. 8, 27 S.Ct. 236, 51 L.Ed. 345 (1907), *Higbee Estate*, 372 Pa. 233, 93 A.2d 467 (1953). However, it is equally clear that a foreign judgment transferred to Pennsylvania is presumptively valid. The foreign judgment is presumed to have been entered by a court with jurisdiction to do so and that its proceedings were regular and not in derogation of the debtor's due process rights. Contrary to appellee's assertion, if the debtor chooses to challenge the validity of the foreign judgment, it has the burden to show a lack of jurisdiction or any irregularity in the proceedings. *Noetzel v. Glasgow, Inc.*, 338 Pa.Super. 458, 487 A.2d 1372 (1985), *Commonwealth ex rel. Lorusso v. Lorusso*, 189 Pa.Super. 403, 150 A.2d 370 (1959), *Commonwealth ex rel. Cronhardt v. Cronhardt*, 127 Pa.Super. 501, 193 A. 484 (1937). *Also see Thorn Estate*, 353 Pa. 603, 46 A.2d 258 (1946). Therefore, since the Ohio judgment is presumed to be valid, there is no constitutional requirement that *all* of the docket entries preceding the entry of the judgment be filed in Pennsylvania in order for the judgment to be entitled to full faith and credit.

Moreover, appellee has never challenged Ohio's jurisdiction to enter the judgment or the regularity of the proceedings conducted in Ohio. If appellant chose to make such claims, the burden was on it to raise the issue in an appropriate manner and to subsequently present evidence in support of such claims. However, it has never asserted, either in the trial court or on appeal, a lack of jurisdiction in Ohio, or a denial of its basic due process rights.

Since section 4306(b) only requires that those docket entries *incidental* to the judgment be filed and there is no constitutional requirement that *all* docket entries be filed with the foreign judgment, the trial court erred in striking the judgment.

Order reversed.