J-A12025-25 & J-A12026-25

2025 PA Super 175

| | | |
|---|---|---|
| CARROLL S. DAWSON (TRUSTEE OF THE DAWSON FAMILY TRUST DATED DECEMBER 5, 1989) | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| SONIA SONJU | : : | No. 2317 EDA 2024 |
| Appellant | : | |

Appeal from the Order Entered September 3, 2024
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2024-01339

| | | |
|---|---|---|
| CARROLL S. DAWSON (SUCCESSOR IN INTEREST TO WILLIAM T. DAWSON, DECEASED) | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| SONIA SONJU | : : | No. 2340 EDA 2024 |
| Appellant | : | |

Appeal from the Order Entered August 2, 2024
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2024-01328

BEFORE:  STABILE, J., DUBOW, J., and SULLIVAN, J.

OPINION BY DUBOW, J.:                              **FILED AUGUST 13, 2025**

In these consolidated cases, Appellant Sonia Sonju appeals from the August 2, 2024 and September 3, 2024 orders entered by the Montgomery County Court of Common Pleas denying Appellant's motions to strike and/or open two foreign judgments entered by Appellee Carroll S. Dawson pursuant

to the Uniform Enforcement of Foreign Judgments Act ("UEFJA" or "the Act"), 42 Pa.C.S. § 4306. After careful review, we affirm.

We glean the relevant facts and procedural history from the trial court's opinions and certified records.[1] On January 24, 2024, at Mongomery County Docket No. 2024-01328 ("Case 1"), Appellee filed a praecipe requesting that the trial court transfer and enter on the Montgomery County judgment index a judgment originally entered in Orange County, California in favor of Appellee as "Successor in Interest to William T. Dawson, Deceased," and against Appellant in the amount of $1,374,148.77.[2] Initially, Appellee mistakenly attached to the praecipe a June 16, 1989 California order entering "judgment of dissolution" of the marriage between Mr. Dawson and Appellant. Appellee additionally attached California renewals of an unattached November 29, 1993 judgment naming Appellee as successor in interest to Mr. Dawson, dated November 3, 2003, October 16, 2013, and August 15, 2023. On the same day, Appellee filed, *inter alia,* a praecipe for writ of execution of the judgment against Appellant and various financial institutions as garnishees, for an updated total with interest of $1,418,667.43. On January 27, 2024, Appellee praeciped to attach the referenced November 29, 1993 California judgment,

---

[1] After argument, this Court consolidated the cases as they involve the same issues and related parties. Indeed, the trial court's opinions and the parties' briefs are nearly identical but for slight factual distinctions.

[2] Mr. Dawson was previously married to Appellant and subsequently married to Appellee, prior to his death on April 1, 1996. Mr. Dawson was also the settlor of the Dawson Family Trust.

providing for the distribution of marital property, including an award of $175,615.00, plus interest, from Appellant to Mr. Dawson.

Similarly, on January 25, 2024, at Montgomery County Docket No. 2024-1339 ("Case 2"), Appellee as Trustee of the Dawson Family Trust filed a praecipe requesting that the trial court transfer and enter on the Montgomery County judgment index a judgment originally entered in Orange County, California in favor of Appellee, as trustee, and against Appellant in the amount of $519,695.60. Appellant attached a March 23, 1998 California judgment, as well as February 20, 2008 and February 14, 2018 California renewals of the judgment.[3] Additionally, Appellee filed, *inter alia*, a praecipe for writ of execution of the judgment against Appellant and various financial institutions as garnishees for an updated total with interest of $822,364.89.

On March 8, 2024, Appellant filed an emergency petition to strike and/or open the foreign judgment in both Case 1 and Case 2. She requested that the court strike the judgments, claiming *inter alia*, that the twenty-year limitation period set forth in 42 Pa.C.S. § 5529 barred execution of the original California judgments entered in November 1993 and March 1998. She also

_____

[3] The original judgment, dated March 23, 1998, involved a March 12, 1998 jury award of $9,097.00 in damages for trespass plus costs and attorney fees, for a total judgment of approximately $141,000.00. The California court entered the original judgment in favor of Mr. Dawson and entities owned or controlled by Mr. Dawson. Appellee attached to the Pennsylvania filings a February 13, 2008 California notice indicating the assignment of rights from the related entities to the Dawson Family Trust.

maintained that Appellee failed to file docket entries as required by 42 Pa.C.S. § 4306(b).

A few days later, Appellee praeciped in both cases to attach a "complete certified copy of docket entries" relating to the California judgments. Case 1 and Case 2 Praecipe to Attach, dated 3/11/24.

On March 13, 2024, the court entered an order at both dockets directing Appellee's counsel to maintain the funds previously received from one of the garnishees in escrow and not to enter judgment against any other garnishees, while ordering the garnishees to freeze Appellant's funds until further order.

On July 29, 2024, the court presided over a hearing addressing both Case 1 and Case 2. On August 2, 2024, the court denied Appellant's emergency petition to strike and/or open the foreign judgment in an order listing only Case 1.

On August 30, 2024, Appellant filed notices of appeal in both cases, even though the court had yet to enter an order in Case 2. On September 3, 2024, the court entered an order in Case 2 denying the emergency petition to strike and/or open the foreign judgment.[4] Appellant and the court complied with Pa.R.A.P. 1925.

---

[4] We deem Appellant's notice of appeal in Case 2 timely filed as she filed it following the order in Case 1, which involved the same legal issues and thus constituted an "announcement of a determination" for purposes of Case 2. Pa.R.A.P. 905(a)(5) (providing that where an appellant filed a notice of appeal "after the announcement of a determination but before the entry of an appealable order[,]" this Court will treat the notice "as filed after such entry and on the day thereof").

In Case 1, Appellant raises the following issues:

1. Did the trial court err in holding that [Appellee's] execution on a California judgment against the personal property of [Appellant] was not time-barred by the Pennsylvania 20-year statute of limitations under 42 Pa.C.S. § 5529, where the judgment was not registered in Pennsylvania until more than 30 years after the original entry of judgment in California in 1993?

2. Did the trial court err[] in denying [Appellant's] petition to strike the foreign judgment registered by [Appellee], and to enjoin enforcement of the judgment, because [Appellee] failed to comply with 42 Pa.C.S. § 4306 when registering the judgment, including her failure to file the docket entries incidental to the foreign judgment as required by 42 Pa.C.S. § 4306(b); to file a copy of the judgment itself; and to establish her right to enforce the judgment?

Appellant's Case 1 Br. at 5-6. In Case 2, Appellant raises the same issues as in Case 1 and adds the following issue:[5]

3. Was the entry of judgment against garnishee Bank of America, N.A., and the garnishee's release of funds to [Appellee], violative of Pa.R.C[iv].P. 3123.1, where [Appellant] had filed a claim for exemption in a separate action between the same parties, both [Appellee] and garnishee were on notice of [Appellant's] claim of exemption, and a hearing on the exemption claim was pending?

Appellant's Case 2 Br. at 6. Appellant, however, did not include this issue in her Pa.R.A.P. 1925(b) Statement. Accordingly, she waived this issue. Pa.R.A.P. 1925(b)(4)(vii).

Both of Appellant's preserved issues challenge the trial court's denial of her petitions to strike the foreign judgments. "A petition to strike a judgment

---

[5] In her Case 2 Statement of Questions, Appellant did not change the date of the original California judgment referenced in her first question. We recognize that the original entry of judgment for Case 2 was 1998, rather than 1993.

is a common law proceeding which operates as a demurrer to the record. A petition to strike a judgment may be granted only for a fatal defect or irregularity appearing on the face of the record." **1650 E. 47th LLC v. 360 Degrees of Perfection**, 331 A.3d 63, 68 (Pa. Super. 2025) (citation omitted). "Our standard of review from the denial of [] petitions to open and/or strike [a] foreign judgment is limited to whether the trial court manifestly abused its discretion or committed an error of law." **Olympus Corp. v. Canady**, 962 A.2d 671, 673 (Pa. Super. 2008).

These consolidated cases present questions of statutory interpretation over which our standard of review is *de novo,* and our scope of review is plenary. **Id.** When engaging in statutory interpretation, our goal "is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). We look first to the statutory language, remembering that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." **Id.** § 1921(b).

"When the words of the statute are not explicit," we may ascertain the intention of the General Assembly by considering, *inter alia* "[t]he occasion and necessity for the statute[;]" "[t]he mischief to be remedied[;]" and "[t]he object to be attained." **Id.** § 1921(c). Moreover, we may presume that the "General Assembly does not intend to violate the Constitution of the United States." **Id.** § 1922(3). We interpret and construe uniform laws, such as the Uniform Enforcement of Foreign Judgments Act, "to effect their general

purpose to make uniform the laws of those states which enact them." *Id.* at § 1927.

The General Assembly enacted the UEFJA to provide Pennsylvania "with a speedy and economical method" of abiding by the Full Faith and Credit Clause of the United States Constitution.[6] *Nobel Well Serv., Inc. v. Penn Energy, Inc.*, 502 A.2d 200, 205 (Pa. Super. 1985) (emphasis and citation omitted). Prior to the UEFJA, those seeking to enforce a foreign judgment had "to commence a civil action on the existing foreign judgment, consummating in a Pennsylvania judgment[.]" *Morrissey v. Morrissey*, 713 A.2d 614, 616 (Pa. 1998).[7] As this involved the commencement of an action, Pennsylvania's four-year statute of limitations for actions upon judgments applied equally to foreign judgments. *See id.*

Through the enactment of the UEFJA and similar statutes, "the legislature implemented streamlined procedures for domesticating foreign judgments, establishing registration as an alternative to the commencement of a civil action." *Id.* at 617. In the absence of a need to file an action upon a judgment, the Supreme Court recognized that the four-year statute of limitations for filing an action upon a judgment, like "any other abandoned procedural requirement associated with an action upon a judgment," did not

---

[6] U.S. CONST. art. IV, § 1 ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.").

[7] *Morrissey* involved application of the Revised Uniform Reciprocal Enforcement of Support Act but discussed the UEFJA and the enforcement of foreign judgments generally.

apply to the registration of foreign judgments under the uniform acts. *Id.* at 618; *see also Bonfiglio v. Bonfiglio*, 781 A.2d 1197, 1200 (Pa. Super. 2001) (recognizing that the rationale of *Morrissey* extends to UEFJA). Moreover, unlike the versions enacted in some other states, Pennsylvania's UEFJA did not include a statute of limitations for the domestication of foreign judgments. *Morrissey*, 713 A.2d at 618.

Pennsylvania's UEFJA provides as follows for the filing of foreign judgments:

> A copy of any foreign judgment including the docket entries incidental thereto authenticated in accordance with act of Congress or this title may be filed in the office of the clerk of any court of common pleas of this Commonwealth. The clerk shall treat the foreign judgment in the same manner as a judgment of any court of common pleas of this Commonwealth. A judgment so filed shall be a lien as of the date of filing and shall have the same effect and be subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of any court of common pleas of this Commonwealth and may be enforced or satisfied in like manner.

42 Pa.C.S. § 4306(b).

Under the UEFJA, we presume that the foreign judgment was "entered by a court with jurisdiction to do so and that its proceedings were regular and not in derogation of the debtor's due process rights[,]" such that the debtor has the burden to disprove the presumption. *Nobel Well Serv., Inc.*, 502 A.2d at 205. Moreover, "Pennsylvania enforces a valid sister-state judgment transferred to Pennsylvania even if the judgment violates Pennsylvania public

policy." ***Standard Chartered Bank v. Ahmad Hamad Al Gosaibi & Bros. Co.***, 99 A.3d 936, 942 (Pa. Super. 2014).

\* \* \* \*

In her first issue, Appellant raises a question of first impression regarding Pennsylvania's twenty-year limitation on the execution against personal property, set forth in 42 Pa.C.S. § 5529(a), and its application to foreign judgments domesticated pursuant to Pennsylvania's UEFJA, 42 Pa.C.S. § 4306. Section 5529(a) provides as follows:

> An execution against personal property must be issued within 20 years after the **entry of the judgment** upon which the execution is to be issued.

42 Pa.C.S. § 5529(a) (emphasis added). As applied to domesticated foreign judgments, the question is whether the twenty-year clock begins upon the entry of the original foreign judgment, the entry of any renewed foreign judgment, or the entry of the domesticated judgment in Pennsylvania. Appellant asks this court to use the original 1993 and 1998 California judgments to calculate the 20-year limitation period, whereas Appellee argues for use of the January 2024 entry of the domesticated judgments in Pennsylvania. Like the trial court, we agree with Appellee.

We initially recognize that the language of Section 5529 does not specify which of the potential entries of judgment should be applied to a domesticated foreign judgment. Nevertheless, we find that the statutory language favors use of the entry of the domesticated judgment in Pennsylvania as the starting point for the 20 years, as the Pennsylvania judgment is the judgment "upon

which the execution is to be issued," 42 Pa.C.S. § 5529(a), given that foreign judgments cannot be executed in Pennsylvania prior to domestication. *See, e.g., Morrissey*, 713 A.2d at 617. Moreover, as set forth below, the rules of statutory construction support this conclusion.

First, we reiterate that "the General Assembly does not intend to violate [the Full Faith and Credit Clause of] the Constitution of the United States[.]" 1 Pa.C.S. § 1922(3). As set forth above, Pennsylvania adopted the UEFJA to provide a streamlined process of enforcing foreign judgments in compliance with the Full Faith and Credit Clause. *See Nobel Well Serv., Inc.,* 502 A.2d at 205. As the UEFJA is a uniform law, we seek to interpret it in conformity with other states. 1 Pa.C.S. § 1927. We are additionally informed by the federal courts' application of the Registration of Judgments for Enforcement in Other Districts, 28 U.S.C.A. § 1963, upon which the drafters modeled the UEFJA. *See Nobel Well Serv., Inc.*, 502 A.2d at 205.

While states have not been entirely uniform, "the substantial weight of authority holds that the filing of a foreign judgment triggers a new limitations period." *Czajka v. Holt Graphic Arts, Inc.,* 310 A.3d 1051, 1055 (D.C. 2024) (*en banc)* (collecting cases). Indeed, the District of Columbia Court of Appeals recently recounted that 15 states utilize the entry of the domesticated judgment in the receiving state as the triggering event for the relevant

enforcement or execution period, whereas only 5 states utilize the entry of judgment in the original state.[8] ***Id.***

---

[8] Specifically, the D.C. Court of Appeals referenced decisions from the following states as utilizing the entry of the "new" domesticated judgment: Illinois, ***see Logemann Holding, Inc. v. Lieber***, 793 N.E.2d 135, 138 (Ill. App. Ct. 2003) (holding that registration of foreign judgment "will be considered, for the purposes of enforcement, as a new judgment" of the registering state); Kansas, ***see Warner v. Warner***, 668 P.2d 193, 195 (Kan. Ct. App. 1983) (holding that the "effective date for dormancy purposes of a foreign judgment" is the registration date in Kansas); Louisianna, ***see Canizaro Trigiani Architects v. Crowe***, 815 So.2d 386, 392 (La. Ct. App. 2002) ("[T]he procedure for enforcement of a foreign judgment under the EFJA results in a new Louisiana judgment[.]"); Maryland, ***see Stevenson v. Edgefield Holdings, LLC***, 225 A.3d 85, 99 (Md. Ct. Spec. App. 2020) (adopting federal practice and concluding that "domesticating [a] foreign judgment is similar to initiating a new cause of action" such that "the enforcement date would be when a final judgment is entered in Maryland"); Missouri, ***see Walnut Grove Prods., a Div. of W.R. Grace & Co. v. Schnel***, 659 S.W.2d 6, 7 (Mo. Ct. App. 1983) (recognizing that state rule provides that "[w]hen the foreign judgment was registered, it became a new judgment" in Missouri); Nevada, ***see Flangas v. Perfekt Mktg., LLC***, 507 P.3d 574, 582 (Nev. 2022), ("[A] foreign judgment's enforceability is determined on the date the foreign judgment is domesticated in Nevada district court[.]"); New Jersey, ***see Singh v. Sidana***, 904 A.2d 721, 724 (N.J. Super. 2006) ("As long as a judgment is viable and enforceable in the rendering state when domestication proceedings are commenced, that judgment becomes enforceable, by the terms of New Jersey law, at that moment."); New Mexico, ***see Galef v. Buena Vista Dairy***, 875 P.2d 1132, 1135 (N.M. Ct. App. 1994) (holding that domestication judgment "converted the [] California judgment into a separate New Mexico judgment, with applicable New Mexico statutes of limitations to be measured from [date of domestication]"); New York, ***see Mee v. Sprague***, 545 N.Y.S.2d 268 (N.Y. Sup. Ct. 1989); North Carolina, ***see Nielson v. Schmoke***, 863 S.E.2d 652, 658 (N.C. Ct. App. 2021) ("[Under] North Carolina's UEFJA, when a foreign money judgment is filed in North Carolina . . . , such filing has the effect of creating a new North Carolina judgment[.]"); Oklahoma, ***see Drllevich Construction, Inc. v. Stock***, 958 P.2d 1277 (Okla. 1998), ("[A] foreign judgment which is enforceable at the time the judgment creditor registers the foreign judgment in Oklahoma will be considered, for the purposes of enforcement, as a new judgment of

*(Footnote Continued Next Page)*

Moreover, the court in **Czajka** observed that "every federal court of appeals that has decided the issue has held that registration of a judgment in a new district court . . . triggers a new limitations period for the enforcement of the judgment, measured from the date of registration rather than from the date of the original issuance of the underlying judgment." ***Id.*** at 1056 (indicating the agreement of the Fourth, Fifth, Eighth and Ninth Circuits).

Considering this persuasive authority and with the goal of uniformity in enforcing foreign judgments, we agree with the trial court that, in cases involving domesticated foreign judgments, Section 5529's phrase "entry of judgment" refers to the entry of the new domesticated judgment in Pennsylvania, rather than the entry of the original judgment in the foreign state. Trial Ct. Ops., 10/30/24, at 4-7.

---

[Oklahoma]"); Oregon, ***see Hanley Eng'g, Inc. v. Weitz & Co., Inc.,*** 516 P.3d 1192, 1196 (Or. 2022)("[W]hen plaintiff filed the [Idaho] judgment in Oregon . . ., the judgment became a judgment of the Oregon courts[.]"); South Carolina, ***see Payne v. Claffy***, 315 S.E.2d 814 (S.C. Ct. App. 1984); Texas, ***see Ware v. Everest Grp., L.L.C.***, 238 S.W.3d 855, 863 (Tex. Ct. App. 2007) ("Filing a foreign judgment under the UEFJA has the effect of initiating an enforcement proceeding and rendering a final Texas judgment simultaneously.") (citation omitted); and Utah, ***see Pan Energy v. Martin***, 813 P.2d 1142, 1144 (Utah 1991) ("[A]t least for purposes of enforcement, the filing of a foreign judgment . . . creates a new Utah judgment which is governed by the Utah statute of limitations[.]").

In contrast, the D.C. Court of Appeals found that only Colorado, Georgia, Florida, Idaho, and Montana utilized the entry of judgment in the originating state. ***Czajka***, 310 A.3d at 1055 (collecting cases). We additionally recognize that, unlike Pennsylvania, Minnesota's version of the UEFJA expressly provides that "the date of entry of a foreign judgment is the original date of entry in the foreign jurisdiction." Minn. Stat. Ann. § 548.27.

We reject Appellant's contrary arguments. Appellant first argues that this case should be controlled by the Uniform Statute of Limitations on Foreign Claims Act, 42 Pa.C.S. § 5521, which provides that "[t]he period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." Appellant's Brs. at 12-15. We conclude that this statute is inapplicable to the instant cases as they do not involve the filing of a claim based upon an accrued cause of action but instead the execution of a judgment, a stage far beyond the accrual of the cause of action. *See Stewart v. Stewart*, 743 A.2d 955, 958 (Pa. Super. 1999) (recognizing that when a judgment is entered, "the only issue is that of enforcement[,] and statutes of limitations pertaining to the underlying causes of action no longer apply").

Appellant additionally argues that Section 5529 forbids "the enforcement of a judgment older than 20 years against personal property" because "a judgment of that age is stale." Appellant's Brs. at 15. She emphasizes that the original California judgments in this case are 25 and 30 years old and contends that the judgments "cannot obtain new birthdays in Pennsylvania." *Id.* at 19. Appellant, however, provides no relevant authority that would permit a Pennsylvania court to ignore valid renewals of judgments in the foreign state nor does she argue that these specific judgments would

not have been enforceable in California.[9] Moreover, we emphasize that, unlike some of our sister states, the General Assembly has not incorporated into Pennsylvania's UEFJA a statute of limitations for the domestication of foreign judgments. **See Morrissey**, 713 A.2d at 617. Rather, we agree with the analysis set forth by the New Mexico Court of Appeals, opining that the Full Faith and Credit Clause requires courts to "treat foreign judgments that are revived in the rendering state in the same manner as the rendering state would treat the revived judgment." **Schmierer v. Tribal Tr.**, 427 P.3d 143, 152 (N.M. Ct. App. 2018) (surveying cases including *dicta* in **Watkins v. Conway**, 385 U.S. 188, 189–90 (1966) (contemplating the use of revived judgments)).

Having dismissed Appellant's arguments, we affirm the trial court's conclusion that the relevant entries of judgment in the instant cases were the January 2024 entries of judgment in Montgomery County, such that Appellee's praecipes for writ of execution, filed the same day, do not violate Section 5529's 20-year limitation for execution of judgments.

---

[9] Under California law, an applicant may renew a money judgment and thus extend "the period of enforceability of the judgment as renewed for a period of 10 years from the date the application is filed[,]" with no limitation on the number of renewals, so long as the application is filed "before the expiration of the 10-year period of enforceability of the renewed judgment." Cal. Civ. Proc. Code §§ 683.120(b), .130(a). Child, family, and spousal support judgments "are enforceable until paid in full or otherwise satisfied" but nevertheless may be renewed as occurred in the instant case. Cal. Fam. Code § 291(a), (c). Thus, the 2018 and 2023 renewals of the judgments could have been enforced in California until 2028 and 2033, respectively, well after Appellee filed the January 2024 praecipes to enter the judgments in Montgomery County.

\* \* \* \*

In her second issue, Appellant asserts that the trial court erred in concluding that Appellee complied with the documentation requirements of the UEFJA, which as noted above, provides that "[a] copy of any foreign judgment including the **docket entries incidental thereto** . . . may be filed in the office of the clerk of any court of common pleas of this Commonwealth." 42 Pa.C.S. § 4306(b) (emphasis added); Appellant's Brs. at 20-22.

This Court previously concluded that the filing of "docket entries **incidental** thereto" does not require "that **all** of the foreign jurisdiction's docket entries must be filed" when domesticating a foreign judgment into Pennsylvania. *Nobel Well Serv., Inc.*, 502 A.2d at 206 (emphasis in original). This Court explained that Pennsylvania included the incidental docket entries requirement "so that the transferee court in Pennsylvania could be certain that after entry of the judgment in the foreign state, it had not been satisfied, levies had not accrued, or supplemental proceedings had not taken place." *Id.* at 204. Thus, the Court held that "the filing of certified copies of the judgment docket entry and all subsequent docket entries is sufficient to fulfill the Act's requirement of filing docket entries 'incidental' to the judgment." *Id.* Conversely, the court explained that the following did not need to be filed pursuant to Section 4306(b): "pleadings, motions, non-judgment orders, and proof of service[.]" *Id.*

In regard to Case 1, Appellant emphasizes that Appellee's initial filing included only the 1989 dissolution of marriage rather than the 1993 judgment,

which included the monetary award to Mr. Dawson. Appellant's Case 1 Br. at 20. Appellant also asserts that in both Case 1 and Case 2 Appellee failed "to file the docket entries incidental to the judgment[] or proof that she was the successor in interest or owner of the judgment." Appellant's Brs. at 20. Appellant requests that we strike the judgments because of these alleged defects.

Upon review, we reject Appellant's claims. First, regarding the initial failure to include the 1993 judgment in the Case 1 filings, Appellee remedied the issue three days after the initial filing by filing a praecipe to attach the 1993 judgment. Appellant cites no authority for the proposition that Appellee could not supplement her filings. Accordingly, we agree with the trial court that Appellee's subsequent attachment of the correct judgment "cured the defect in the original filing[.]" Trial Ct. Op (Case 1) at 8.

Turning to Appellee's alleged failure in both Case 1 and Case 2 to file all "docket entries incidental thereto," we emphasize that Appellant does not direct our attention to any specific incidental docket entries missing from Appellee's original filing, such as a docket entry indicating that the judgment had been satisfied in California. Appellant's Br. at 20-22. Appellant also provides no relevant authority to support her objection to Appellee's subsequent filing of all docket entries. *Id.*

We conclude that no relief is due. Appellant fails to refute the trial court's conclusion that Appellee filed "all docket entries incidental to the judgment." Trial Ct. Ops. at 8. Moreover, the court aptly noted that "even if

there were defects in the original filing, [Appellee cured them] by the subsequent praecipe to attach the full docket sheet." ***Id.*** at 8 n.13 (Case 1), n.11 (Case 2). Thus, we affirm the trial court's conclusion that Appellee satisfied the documentation requirements of Section 4306.

As neither of Appellant's issues warrant relief, we affirm the orders.

Orders affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 8/13/2025